PEOPLE v. McGATH

PEOPLE v. MAGLAYA

1. CRIMINAL LAW—DISCOVERY—PSYCHIATRIC RECORDS.

Refusing access to psychiatric records in the Recorder's Court
Psychiatric Clinic about the mental condition of the prosecu-
tion's key witness and refusing to allow the defendants to
examine the reports was not error where the existence of the
records was disclosed, and the records and the doctors who
had examined the witness were subject to subpoena and could
have been reached by the defense.

2. CRIMINAL LAW—SENTENCING—DELAY—STANDING.

A criminal defendant has no standing to assert that delays in
the sentencing of the key witness against him violated the
defendant's own rights.

3. CRIMINAL LAW—WITNESSES—CREDIBILITY—PROMISE OF LENIENCY
—QUESTION OF FACT.

The question whether the prosecution's key witness was telling
the truth even though the sentencing of the witness had been
repeatedly delayed until after he testified against the defend-
ant, thereby giving rise to the possibility that leniency had
been promised him, was a question for the jury to decide.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—LIMITING INSTRUCTIONS
—REQUEST.

Failure to give sua sponte a limiting instruction to the jury
concerning the prosecution's key witness's testimony that he

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Depositions and Discovery § 322.
[2] 21 Am Jur 2d, Criminal Law §§ 526, 555–557.
[3, 13] 4 Am Jur, Witnesses § 860 et seq.
[4] 53 Am Jur, Trial § 646.
[5] 29 Am Jur 2d, Evidence §§ 1082, 1083, 1087, 1124.
[6–9] 21 Am Jur 2d, Criminal Law § 315.
[10, 11] 21 Am Jur 2d, Criminal Law §§ 310, 311.
 Right of defendant in criminal case to conduct defense in person.
 or to participate with counsel. 77 ALR2d 1233.
[12] 21 Am Jur 2d, Criminal Law §§ 533, 572.

had accomplices in other robberies in which he participated, leaving open the possibility that the jury might infer that the witness was referring to the defendants was not error where no limiting instruction was requested.

5. EVIDENCE—PRIOR INCONSISTENT STATEMENT—WARNING OF RIGHTS.
   Allowing the prosecutor to ask the defendant, during cross-examination, if the defendant had ever given a different alibi to police, was not error on the ground that the prosecution had not established that the defendant had been advised of his constitutional rights where no previous statement was given or introduced into evidence.

6. CRIMINAL LAW—INEFFECTIVE COUNSEL.
   Defendant was not denied effective counsel even though defense counsel failed to object to a police officer's testimony that the officer found a gun in defendant's photography studio at the time of the defendant's arrest where defense counsel requested an instruction to the jury regarding the gun and the trial judge told the jury to disregard testimony concerning the gun.

7. CRIMINAL LAW—INEFFECTIVE COUNSEL—STANDARD.
   A criminal defendant's conviction will not be reversed on the ground of ineffectiveness of counsel unless the lawyer's mistake is so serious that it may have been decisive in bringing about defendant's conviction.

8. CRIMINAL LAW — INEFFECTIVE COUNSEL — TIME TO PREPARE — CALLING WITNESSES.
   Defendant was not denied effective counsel on the ground that counsel was not given adequate time to prepare his defense, particularly time to interview alibi witnesses even though defense counsel failed to call the six alibi witnesses that he said he would call during *voir dire* where three alibi witnesses were called, counsel announced that two of the uncalled witnesses would not be called because their testimony would be cumulative, the court indicated its willingness to allow defense counsel time to prepare his case, and defense counsel at no time expressed dissatisfaction with the time allowed.

9. CRIMINAL LAW—INEFFECTIVE COUNSEL—CALLING WITNESSES.
   Defense counsel's failure to call some alibi witnesses that the defendant thought should have been called does not amount to a denial of effective counsel; the decision to call witnesses to testify is a matter of trial strategy best left to counsel's discretion.

10. Criminal Law—Right of Self-Representation.

A defendant has the right to represent himself in court; however the trial court does not commit reversible error in permitting assigned counsel to continue to represent the defendant where the defendant does not assert his right to defend himself and where it cannot be inferred from the record that the defendant wants to represent himself.

11. Criminal Law—Right of Self-Representation.

Defendant was not denied the right to conduct his own defense where his only expression of dissatisfaction with his lawyer occurred before trial, after consulting with his court-appointed attorney who continued to represent the defendant without objection, and the defendant desired not to represent himself but to have another attorney represent him.

12. Criminal Law—Sentencing—Discretion—Appeal and Error.

Imposition of sentences is within the trial court's discretion; sentences which are within the statutory maximum will not be reviewed on appeal.

13. Witnesses—Credibility—Question of Fact.

Inconsistencies between a prosecution's witness's preliminary examination testimony and trial testimony, adjournment of the witness's sentencing, and the witness's mental condition were factors to be considered by the trier of fact in deciding whether to believe the witness's testimony.

Appeal from Recorder's Court of Detroit, Robert E. DeMascio, J. Submitted Division 1 December 10, 1970, at Detroit. (Docket No. 7109.) Decided March 22, 1971. Leave to appeal denied August 31, 1971, 385 Mich 785.

Ross McGath and Vincent Maglaya were convicted of armed robbery. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia J. Boyle,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, for defendants on appeal.

Before: Danhof, P. J., and Holbrook and Vander Wal,* JJ.

Vander Wal, J.  On May 23, 1966, the manager of a Kroger Market located at 5931 Michigan Avenue, Detroit, was robbed at gunpoint of approximately $1500.

On September 2, 1966, Patrick Logan turned himself into the police, confessed commission of this and other crimes, and named as his accomplices defendant Maglaya and defendant McGath.

As a result, defendant Maglaya and defendant McGath were charged with the robbery of May 23, 1966.

Defendant Maglaya and Reece Hayes were charged with another armed robbery dated April 1, 1966, and were found guilty.

Prior to examination on December 6, 1966, a proceeding was held before the Honorable Daniel J. Van Antwerp, the purpose of which was to determine whether a preliminary examination would be held.[1]

It is clear that the proceedings dealt with both cases since all three defendants were brought in at the request of counsel.

Both cases are mentioned and all defendants claimed that they had a right to waive examination.

The people claimed that an examination was necessary to preserve Patrick Logan's testimony, because threats had been made against his life.

A preliminary examination was held in both cases on December 16, 1966.  Maglaya was represented in both cases by retained counsel.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Although the transcript is styled *People* v. *McGath* and *Maglaya*, it is numbered A-133317, the Hayes-Maglaya file number.

The defendants raise eight issues on this appeal for our review and decision, and we will treat each one of them separately.

I. A. Whether the court erred in withholding from the defense information which it had ordered its own psychiatric clinic to prepare, which information was highly relevant to the credibility of the key prosecution witness and would have been admissible at trial?

Defendants allege that reversible error was committed by the trial court in refusing access to the psychiatric file on Patrick Logan which was on file in the Recorder's Court Psychiatric Clinic and that they were thereby denied a fair opportunity to properly attack the credibility of the witness Logan through enlightened cross-examination.

A motion was made by the defense for the appointment of a sanity commission to examine Logan. The officer in charge stated that defendant had been examined by the Recorder's Court Psychiatric Clinic in connection with the charge on which he was waiting sentence.

Judge Van Antwerp, before the examination was held in the lower court, denied the motion, and also denied defendants' motion to examine the psychiatric clinic's file on Logan, on the ground that the records were confidential.

Thereafter, as noted above, examinations were held and McGath and Maglaya were bound over on the instant charge of robbery armed (133307) and Hayes and Maglaya were bound over on robbery armed in case number 133317. 17 Mich App 379.

During the trial of Hayes and Maglaya which was concluded on May 12, 1967, several months before the beginning of the trial of the instant case, the attorney for both of the defendants in that case moved

to prevent Logan from taking the stand, on the basis of his prior commitment to Ionia.

The attorney stated that Logan had been referred to the psychiatric clinic "as a matter precedent to sentence." The record of the trial (133317) is replete with facts going to the question of competency and credibility, including the 1966 examination by the Recorder's Court Psychiatric Clinic. Moreover, counsel had reviewed that file during the course of the instant trial.

Finally Logan himself testified that he had had homicidal compulsions, used drugs, had been despondent and depressed, and had attempted suicide six years ago; and that he had been committed to the Ionia State Hospital as a "manic depressive", and that he had been restored to competency.

Thus, the fact that Logan had mental problems and had been examined by the Clinic was known to Maglaya's counsel as early as December 6, 1966. The people did in fact disclose the existence of the recorder's court files. Thus, *Giles* v. *Maryland* (1966), 386 US 66 (87 S Ct 793, 17 L Ed 2d 737), *Powell* v. *Wiman* (CA 5, 1961), 293 F2d 605, and the other authority cited in support of appellants' claim is not in point, since there was not in the instant case a withholding or suppression. The defense knew about these reports but didn't subpoena the doctors for the purpose of offering the reports in evidence in this case. The reports and the witnesses were subject to subpoena and so there is no basis for a claim that the people suppressed such evidence, it not being in the people's exclusive possession and it being reachable by the defendants.

I. B. Whether the circumstances surrounding prosecution's treatment of witness Patrick Logan with

respect to the delay in sentencing on the prior charge were so revolting as to show such bias as demands reversal?

Defendants' claim that repeated adjournments of Patrick Logan's sentencing in case No. A131848 shows such *prima facie* bias as to require the reversal of their convictions, particularly in light of the fact that without the testimony of Patrick Logan a serious question of the sufficiency of the evidence would be raised.

Without furnishing a legal basis for their contention, appellants assert that the repeated adjournments of witness Logan's sentence and his subsequent sentence to five years probation, invalidates the conviction herein because there was an "implied promise" to Logan of leniency in his sentence.

Factually, the record establishes that the sentence in Logan's case was adjourned by the trial court pending completion of trial in cases 133317 and 133307. Thereafter, case no 133307 was adjourned four times, and case no 133317 was adjourned three times. Eleven months elapsed from the time of Logan's plea, November 17, 1966, to the time of the instant trial.

Appellants have no standing to assert that a delay in Logan's sentence violated their rights, *People* v. *Goeppner* (1969), 20 Mich App 425.

Secondly, Logan testified at the trial that he had not been promised anything in exchange for his testimony. Appellants claim that there was an implied promise of leniency is, in reality, their statement of disbelief of Logan, an issue which has been resolved by the jury's verdict.

The fundamental inquiry is whether Logan's testimony was true. The jury had before it the fact of previous adjournments, knew that Logan had been

released on personal bond, and chose to believe his testimony. We find the assignment claim of error in this regard is without merit.

II. Whether the trial court erred in failing to instruct the jury *sua sponte* that evidence of other robberies committed by the witness Logan and accomplices was to be considered for a limited purpose?

The following colloquy occurred during the examination of witness Logan:

"*Q*. Now you testified that you had participated in other holdups prior to this one in May?
"*A*. Yes, sir, I had.
"*Q*. Over how long a period of time?
"*A*. About a period of a year's time.
"*Q*. And during this period, how many holdups did you participate in?
"*A*. About nine or ten.
"*Q*. Did you do them alone?
"*A*. No, sir I did not.
"*Q*. Did you have accomplices?
"*A*. I did.
"*Q*. In everyone of the holdups?
"*A*. Everyone of the holdups, yes, sir.
"*Q*. Did you make plans in the participation of these holdups?
"*A*. Yes, sir.
"*Q*. With these accomplices?
"*A*. Yes.
"*Q*. Were cars used in these holdups?
"*A*. On every occasion.
"*Q*. Did you meet these accomplices at various times and go to these places?
"*A*. We did".

Appellants claim that because Logan testified as to accomplices in other robberies the jury may have reasonably thought the witness was referring to the

defendants. They contend that the obvious purpose of the prosecutor's eliciting this testimony from Logan was to implicate them as accomplices in the prior robberies.

A limiting instruction would have been proper, and appellants insist that one should have been made. There was no request for such instruction made on the part of the defendants and that is fatal to their claim.

Where evidence is admissible under the statute the applicable rule in regard to instruction is that of *People v. Anderson* (1968), 13 Mich App 427, 250.

"In the absence of a request or proper objection, the trial court was not required to give the limiting instruction now sought."

In the instant case, defendants did not make a proper objection to the introduction of the testimony nor did they request a limiting instruction. Thus, the trial court was not obligated to give the limiting instruction, *People* v. *Stevens* (1970), 25 Mich App 181.

In addition we are of the opinion that appellants have shown, in this claim of error, a very weak link between the testimony elicited and themselves. The witness was testifying as to his prior conduct and the fact that he had accomplices in these other robberies and so the link between the defendants and the offensive testimony proceeds upon speculation as no specific reference was made to defendants in respect to the prior robberies of Mr. Logan.

Defendants speculate regarding the effect this testimony had on the jury. The prejudice, if any, does not have the proportions of manifest injustice, and there being no objection raised at trial, the issue is foreclosed from review. See *People* v. *Anderson, supra.*

III. Whether reversible error resulted from the prosecutor's eliciting testimony that a gun similar to that used in the robbery was found when Maglaya's photography studio was searched?

On cross-examination of the officer who arrested defendant Maglaya on November 22, 1966, defense counsel asked if a search of the premises had been conducted when Maglaya was arrested. On re-direct the prosecutor asked whether any weapons had been found. The witness indicated that a gun had been found.

Defendants attempt to show bad faith on the part of the prosecutor, indicating that the gun was referred to by the same prosecuting attorney in Detroit Recorder's Court case No. A133317 (*People* v. *Maglaya*). It should be noted that this Court, reviewing the conviction in that case, examined a similar argument. The Court said, in *People* v. *Maglaya* (1969), 17 Mich App 379, 381:

"The gun referred to was similar to the gun used in the robbery. Thus the officer's testimony was not tantamount to reversible prejudice. Moreover, the court's instruction was curative and not compounding as to any prejudice occasioned by the testimony."

The record shows that the trial court struck the testimony relating to the gun and carefully explained to the jury its reasons for striking. In addition, curative instructions were given at appellants' request. No prejudice remains of which complaint may be made.

IV. Whether the prosecuting attorney caused prejudicial error by implying during cross-examination of McGath and his alibi witnesses that McGath had made a prior statement inconsistent with the alibi defense asserted at trial?

Appellant McGath claims to have denied a fair trial because of questioning by the prosecutor on cross-examination which implied the existence of a prior statement in which he told police he was in Pennsylvania.

In the first place no objection was made to the question and thus the matter has not been properly preserved for appellate review. See *People* v. *Jordan* (1967), 7 Mich App 28.

The question was whether the defendant had ever given a different alibi to the police. McGath's contention that reference to his prior statement constitutes error because the People did not establish that *Miranda* warnings[2] were given is without validity because in the instant case no statement was given or used. Thus, there is no factual foundation for a claim of a *Miranda* violation.

V. Whether defendants were denied effective assistance of counsel as shown by counsels' failure to object or move for mistrial upon the introduction of evidence.

When the testimony was elicited that upon the search of defendants-appellants' business premises a .25 caliber gun was found, the attorneys for both defendants did not object.

On direct examination, Officer John J. Yakush testified that he arrested defendant Maglaya. On cross-examination by Mr. Ferguson, Officer Yakush testified that he searched the photography studio where the arrest was made. On re-direct, the prosecutor brought out testimony that a revolver was found on the premises. No objection was made to such testimony at that time, though Maglaya's coun-

---

2 *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

sel requested an instruction regarding the gun found.

The error not having rendered the trial manifestly unfair, and whatever possibility of prejudice having been cured by the court's express statement to the jury that they were to disregard testimony regarding the gun found in the photography studio, it does not appear that their attorneys denied them effective assistance of counsel.

Defendant McGath asserts ineffectiveness of his appointed counsel, Mr. Hubbell, on the ground that he failed to object to the prosecutor's inferences that McGath had made a prior statement to the police inconsistent with the testimony at trial. This Court said in *People* v. *Degraffenreid* (1969), 19 Mich App 702, 717:

"[Such relief will not be granted unless it appears that:] the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted."

VI. Whether Maglaya was denied effective assistance of counsel because of inadequate opportunity for preparation of trial counsel?

Maglaya asserts denial of effective counsel in that defendant himself indicated unreadiness to proceed claiming his appointed attorney, William H. Ferguson, was not fully informed of the case. Mr. Ferguson indicated he was acquainted with the case and that he was aware of the alibi, but had not yet interviewed the alibi witnesses.

The trial court determined that because of an intervening three-day weekend, defense counsel would have sufficient opportunity to complete his preparation. The court also indicated its willing-

ness to allow the defense additional time as the case went along.

Though defendant Maglaya asserts error in being deprived of additional time for the preparation of his defense, he shows no instance where his attorney indicated dissatisfaction with the time allowed.

The only prejudice alleged is that defense counsel had indicated during his *voir dire* examination of the jury that he would call six alibi witnesses on behalf of Maglaya when in fact only three were called.

The record doesn't bear out defendant's contention on this issue because it clearly shows that Maglaya's attorney indicated on the record that he did not intend to call two of the remaining alibi witnesses because their testimony would be cumulative.

In *People* v. *Crosby* (1969), 19 Mich App 135, where defendant claimed that counsel's failure to call a third alleged alibi witness constituted reversible error, the court stated at 142:

"The matter of calling witnesses  *  *  *  is considered to be trial strategy which is best left to trial counsel.

*    *    *

"Failure to call a witness or witnesses, does not, in and of itself, constitute incompetency."

The record fails to show that trial counsel for Maglaya lacked time to prepare, or if he did lack time, such lack denied Maglaya adequate representation.

VII. Whether the trial court committed reversible error in refusing to allow Maglaya to discharge his attorney.

Defendant Maglaya contends that because a defendant has the right to represent himself the trial court committed reversible error in not honoring a

request to discharge appointed counsel. He quotes *People* v. *Cooley* (1968), 11 Mich App 602, for the proposition that failure to act on a defendant's request to discharge his appointed counsel is unconstitutional and thus reversible error.

However, where the defendant does not assert the right and it is not inferrable from the record that defendant desires self-representation, the trial court does not err in permitting assigned counsel to continue to represent the defendant.

Thus, in *People* v. *Fred Smith* (1970), 22 Mich App 22, where defendant indicated on the day of trial, prior to jury selection, that he was dissatisfied with assigned counsel and the case was adjourned for the day to permit consultation between the defendant and counsel, no objection being thereafter made to continuation with counsel, the court concluded that error was not committed since the "defendant did not unequivocally request that he be permitted to conduct his own defense".

In the instant case defendant likewise expressed dissatisfaction with counsel before trial, opportunity for consultation was given and counsel thereafter continued to represent defendant without objection. Moreover, defendant stated during the colloquy between court, counsel, and defendant, "I only want somebody who has had ample opportunity to investigate the case".

Thus defendant indicated that his desire was not to represent himself, but was in fact the desire to have another attorney. See, *United States* v. *Denno* (CA2, 1965), 348 F2d 12, 15, *cert den,* 384 US 1007 (86 S Ct 1950, 16 L ed 2d 1020); *People* v. *Henley* (1969), 382 Mich 143, 148. We find no error on this issue.

VIII. Whether reversible error resides in the disparity between appellants' sentences and that of defendant Logan?

Maglaya received a sentence of 25 to 40 years and McGath received a sentence of 17 to 30 years, whereas defendant Logan received five years probation following his guilty plea.

It is well established that the imposition of sentences is entirely within the trial court's discretion and sentences imposed which are within the statutory maximum will not be reviewed on appeal. *People* v. *Henderson* (1968), 10 Mich App 333; *People* v. *Walker* (1968), 15 Mich App 25.

Here the statutory maximum is "life or for any term of years" (MCLA § 750.529 [Stat Ann 1954 Rev § 28.797]). Thus, as both Maglaya's and McGath's sentences are for less than life imprisonment, neither may be heard to complain of the other's sentence or that of witness Logan.

In conclusion, appellants contend that Logan's testimony was "so patently unreliable" that the conviction cannot stand. They cite inconsistencies between the witness's preliminary examination testimony and his trial testimony; adjournment of Logan's sentence on another charge; and the witness's mental condition as the factual ground for the allegation that the verdict was not supported by sufficient evidence.

All of these matters were brought out in the evidence and brought to the attention of the jury and it became a question of whether the jury believed Logan or the alibi witnesses. The jury's verdict decided this issue, and the reviewing court will not disturb the jury's conclusion.

After a careful review of all the evidence produced at the trial, we conclude that there was sufficient

evidence submitted to justify the verdict of guilty of armed robbery beyond a reasonable doubt.

Affirmed.

All concurred.