PEOPLE v MARSHALL

1. CRIMINAL LAW—AIDING AND ABETTING—LARCENY—INSTRUCTIONS
   TO JURY—EVIDENCE.

   A jury instruction on aiding and abetting in a trial of two
   defendants for larceny was proper where there was evidence of
   a concert of action, even though such an instruction would
   constitute reversible error where there was no evidence to
   support the charge.

2. CRIMINAL LAW—AIDING AND ABETTING—LARCENY—CONCERT OF
   ACTION—INSTRUCTIONS TO JURY—EVIDENCE.

   A jury instruction on aiding and abetting was justified where the
   testimony of a complaining witness in a trial of two codefend-
   ants for larceny was sufficient to show that there was substan-
   tive proof of concert of action on the record; the witness
   testified that he saw the defendants remove clothing from a
   retail department store rack, conceal the clothing under their
   coats, and leave the store without attempting to pay for the
   merchandise.

3. CRIMINAL LAW—AIDING AND ABETTING—INSTRUCTIONS TO JURY.

   Failure to give a limiting instruction on aiding and abetting was
   proper where no request for such an instruction was made nor
   any objection made to its not being included; absent such a
   request or objection, there is no absolute requirement that a
   limiting instruction be given.

4. CRIMINAL LAW—EFFECTIVE ASSISTANCE OF COUNSEL—JOINT REPRE-
   SENTATION—CONFLICT OF INTEREST—PREJUDICE.

   Failure to appoint separate counsel for indigent codefendants is
   not inherent error; joint representation of codefendants be-
   comes improper only when the interests of one defendant so
   conflict with the interests of other defendants that prejudice
   results from the joint representation.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 53 Am Jur, Trial § 647.
[4–6] 21 Am Jur 2d, Criminal Law §§ 22, 309–317.

5. CRIMINAL LAW—EFFECTIVE ASSISTANCE OF COUNSEL—JOINT REPRE-
   SENTATION—LOYALTY OF COUNSEL.

   Joint representation of codefendants is permitted absent a show-
   ing of specific prejudice or real conflict of interest; there was no
   error where there was no showing that either defendant was
   deprived of the undivided loyalty of counsel or that the counsel
   slighted the defense of one defendant for that of another.

6. CRIMINAL LAW—EFFECTIVE ASSISTANCE OF COUNSEL—JOINT REPRE-
   SENTATION—CONFLICT OF INTEREST.

   The existence of a conflict of interest where defense counsel
   represented two codefendants at their trial must be founded on
   something more than speculation and surmise to warrant a
   reversal of conviction.

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 March 11, 1974, at Lansing. (Docket No. 17305.) Decided May 1, 1974.

Jerry Marshall was convicted of larceny in a building. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *F. Jack Belzer,* Assistant Prosecuting Attorney, for the people.

*Mason & Mason,* for defendant.

Before: HOLBROOK, P. J., and ALLEN and VAN VALKENBURG,* JJ.

HOLBROOK, P. J. After being tried jointly, defendant Marshall and a codefendant were convicted of larceny from a building, MCLA 750.360; MSA 28.592, by a jury in Genesee County Circuit Court. Defendant was sentenced to a term of 32 months to 4 years in prison and appeals as of right.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The defendant and one Harold R. Haywood were charged with larceny from a J. L. Hudson Store in Flint Township, Genesee County. The defendant and Haywood were both represented by the same counsel at trial.

The major witness called by the prosecution was a security investigator at the Hudson Store. This investigator, Bernard Teachout, testified that on the evening in question he was situated in an observation booth above the selling area of the store's men's department. He testified that he observed the defendant and Haywood enter the department, walk to a clothes rack and remove clothing therefrom. He testified that Haywood removed a suit jacket and two pairs of pants from a hanger on the rack. The suit coat was handed to defendant Marshall. He testified that Marshall concealed the suit coat underneath the jacket he was wearing and that Haywood concealed the pants under his jacket. Thereafter, the two proceeded to walk through the exit of the store and into the parking area. After calling for assistance, Teachout descended from the observation booth and followed the defendant and Haywood into the parking area. An officer in a Genesee Valley Mall patrol car, who had responded to Teachout's request, called for the subjects to halt. From the testimony presented, it appears that Haywood stopped, whereas the defendant "took off running". Defendant was apprehended approximately 100 feet farther into the parking lot. During this scene, the suit jacket dropped "from underneath Marshall's coat", according to Teachout.

While the defendant was being apprehended, Haywood was apprehended by two other security officers. One of these officers testified that he recovered two pairs of slacks from underneath a

vehicle in the parking lot. When he was apprehended Haywood was standing in front of the vehicle, approximately "ten feet" from the clothing. No one had seen Haywood drop or throw the clothing.

At trial defendant did not testify. Haywood testified that he did not take any clothing from the store. He stated that he and the defendant had entered and left the store together. According to him, while in the men's department, the defendant was in a different area while he was trying on suede jackets.

In his charge to the jury, the trial court included an instruction on aiding and abetting. Defense counsel moved for a mistrial, asserting that he was unaware that that was an issue in the case. The court responded that the instruction would have to remain, and stated:

"I think that the significance is that it is not necessarily an expansion upon the proofs, but rather is a justifiable instruction in a situation comparable to the one that we have before us, where there is an allegation that two parties joined together in the commission of a felony; and I'd have to deny the request."

I

Does the inclusion of the instruction as to aiding and abetting constitute reversible error?

Defendant asserts that the evidence presented at trial supported only either the theory that the defendant was guilty of larceny as a principal or was not guilty of the alleged larceny in any way. He says that, based on Haywood's testimony that he took no clothes and the prosecution's presentation, there may have been an issue as to whether Haywood could have been convicted as an aider

and abettor to the defendant. He asserts that in this context the questioned instruction would have been proper had the trial judge limited the consideration of aiding and abetting only to Haywood.

"The office of the charge is to apprise the jury of the questions involved and the rules of law applicable thereto." *People v Ring,* 267 Mich 657, 661; 255 NW 373; 93 ALR 993, 995–996 (1934). See, also, *People v MacPherson,* 323 Mich 438, 452; 35 NW2d 376, 382 (1949). In pertinent part, the trial court instructed the jury:

> "We also have a law in the state with respect to principals and accessories, and I would like to tell you what it is. It says this: that in all felony cases all parties who are concerned in the commission of a felony, whether they directly commit the act constituting the felony or aid and abet in its commission, are held to be equally responsible; so that whether a party commits by himself the entire act which constitutes a felony, or if he is concerned with another in its commission, if he aids another in its commission, if he assists another in its commission, by word or deed, either by words of encouragement, assistance or support, or by actions giving encouragement, assistance or support, either party under these circumstances would, in the eyes of the law, be held to be equally responsible; that is, so far as their personal guilt or innocence is concerned."[1]

It is reversible error to give an instruction on aiding and abetting when there is no evidence to support that charge. *People v McClendon,* 48 Mich App 552, 558; 210 NW2d 778, 781 (1973); *People v Ware,* 12 Mich App 512, 516; 163 NW2d 250, 252

---

[1] MCLA 767.39; MSA 28.979 provides that:

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

(1968); *People v Davis,* 32 Mich App 704, 705; 189 NW2d 132, 133 (1971). It is a question of whether there is evidence of concert of action. *People v Walker,* 40 Mich App 142, 144; 198 NW2d 449, 450 (1972). See, also, *People v Adams,* 35 Mich App 408, 411; 192 NW2d 625, 626 (1971), and *People v Dawson,* 32 Mich App 336, 337; 188 NW2d 676, 677 (1971).

In *McClendon, supra,* one individual was caught by a police officer at the scene of the crime. The police officer radioed a description of the defendant, and he was apprehended one block away from the building. This Court held that a review of the record disclosed that there was ample proof as to the presence of an accomplice. *Ware, supra,* was a charge of breaking and entering with intent to commit larceny. The people's theory was that the defendant and others had perpetrated the breaking and entering. Some witnesses had used the word "they"; however, there appeared no substantive proof to justify the theory or the charge. In the present case, merely the testimony of the complaining witness, Teachout, is sufficient to show that there was substantive proof on the record of concert of action. Further, the fact that the defendant was apprehended after Haywood some 100 feet farther into the parking lot makes this case similar to *McClendon.* Reviewed in this fashion, the questioned instruction was not erroneous.

As to defendant's assertion of error on the part of the trial court in failing to give a limiting instruction on aiding and abetting, we point out that no request therefor was made nor was an objection made to its not being included. In *People v Chism,* 390 Mich 104, 120–121; 211 NW2d 193, 200 (1973), Justice WILLIAMS wrote:

"Here no instruction was ever requested by defendant nor did he offer objection to the final charge to the jury. As a result, no cautionary instruction was ever given. We hold that in the absence of request or proper objection under present Michigan case law, there is no absolute requirement that the trial judge give limiting instructions, even though such an instruction should have been given."

In *People v Bohm,* 49 Mich App 244, 253–254; 212 NW2d 61, 66 (1973), speaking for this Court, this writer held that where there was no request or objection, there was no error in not giving an instruction as to the defendant's failure to take the witness stand. Similarly, in *People v Grace,* 50 Mich App 604; 213 NW2d 853 (1973), the failure to request a cautionary instruction as to an alleged prior inconsistent statement was held to foreclose reversal. In *People v Anderson,* 13 Mich App 247, 250; 163 NW2d 793, 794 (1968), there was no error in not giving in instruction limiting the use of a police informer's testimony to an alleged prior offense where no request or objection was made. In *People v Stevens,* 25 Mich App 181; 181 NW2d 31 (1970), and *People v White,* 27 Mich App 432; 183 NW2d 606 (1970), evidence which was admissible to show purpose, scheme, plan or assistance did not warrant a *sua sponte* limiting instruction in the absence of request or objection.[2] In *People v*

---

[2] *Cf. People v Askar,* 8 Mich App 95, 101; 153 NW2d 888, 891–892 (1967); *People v Shaw,* 9 Mich App 558, 566; 157 NW2d 811, 815 (1968); *People v Camel,* 11 Mich App 219, 222; 160 NW2d 790, 791 (1968). In *People v Mauch,* 23 Mich App 723, 728; 179 NW2d 184, 186 (1970), this Court stated:

"The reason for the ruling in *Askar* and related cases lies in the desirability of avoiding the potential prejudice inhering in evidence of other crimes used to show either 'motive, intent, etc.', or, where a sexual crime is involved, 'opportunity, disposition of the parties and intimate relations tending to break down self-respect'."

In *Mauch,* however, the Court held, at p 728:

"Although a cautionary instruction would have been proper had it

*McGath,* 31 Mich App 351; 187 NW2d 904 (1971), there was no error in not *sua sponte* giving a limiting instruction where the prosecution's key witness testified that he had accomplices in other robberies which left open the possibility of inference by the jury that the witness was referring to the defendant.

Under the facts in this case, we find there has been no prejudice to the defendant which has resulted in a miscarriage of justice. MCLA 769.26; MSA 28.1096.

## II

Was defendant denied effective assistance of counsel due to joint representation at trial?

After the proofs were presented and before the jury retired, the trial court explained to the jury that joint trial is a matter of convenience and does not dilute each defendant's right to separate determination. In his instructions, the court charged the jury that they were to consider the testimony with respect to each individual separately and that the verdict as to each would be returned separately.

The defendant now asserts that a conflict of interest arose at trial to unduly prejudice him and that he was thereby denied effective assistance of counsel. The defendant did not testify, whereas codefendant Haywood took the stand. When the prosecutor asked Haywood: "Insofar as you are concerned at least, Mr. Haywood, this whole thing is a big mistake; you shouldn't be here at all", Haywood responded: "No, I shouldn't". He testified that the witness Teachout must have been mis-

been requested, the failure to give it in the absence of a request was not reversible error."

taken when he said that he had seen Haywood take things off the hanger or that he was lying. Haywood said that he had not dropped anything from under his clothing or from underneath his arm. Defendant asserts that this testimony implies that if Haywood had not dropped the items then someone else must have. The defendant further claims that the jury must have come to the inescapable conclusion that that someone else was the defendant Marshall. We disagree.

A review of the record reveals that Haywood's testimony did not shift the blame to the defendant. Haywood stated only that he took nothing and had dropped no clothing. This is readily distinguishable from *White v United States,* 396 F2d 822 (CA 5, 1968), and *Sawyer v Brough,* 358 F2d 70 (CA 4, 1966). In *White,* a codefendant made an exculpatory statement and clearly said that White was guilty. In *Sawyer,* p 73, a codefendant had repeatedly referred to the "other fellow", the "other party", and "the party that I was with". The Fourth Circuit held that: "it is inconceivable to this court that he could have been referring to anyone other than Sawyer". Likewise, *People v Hilton,* 26 Mich App 274; 182 NW2d 29 (1970), cited by defendant, is distinguishable.

The claim of ineffective assistance of counsel is not sufficiently shown herein to qualify under the rules of *People v Degraffenreid,* 19 Mich App 702, 710–712; 173 NW2d 317, 321–322 (1969). Nor does the present case fit adequately into any of the categories set out in *People v Dockery,* 20 Mich App 201, 209–210; 173 NW2d 726, 730 (1969).

Failure to appoint separate counsel for indigent codefendants is not inherent error. *Fryar v United States,* 404 F2d 1071, 1073 (CA 10, 1968); *Hilton, supra,* p 276; NW2d 30; *Dockery, supra.* The Sixth

Amendment is not violated by joint representation of codefendants unless a conflict of interests or prejudice results. *Fryar, supra.* In *Hilton, supra,* this Court wrote: "Joint representation of co-defendants becomes improper only when the interests of one defendant so conflict with the interests of other defendants that prejudice results from the joint representation".

The Second Circuit of the United States Court of Appeals has held that some specific instance of prejudice and some real conflict of interests must be shown. *United States v Wisniewski,* 478 F2d 274, 281 (CA 2, 1973); *United States v Lovano,* 420 F2d 769, 773 (CA 2, 1970), *cert den* 397 US 1071; 90 S Ct 1515; 25 L Ed 2d 694 (1970); see, also, *Morgan v United States,* 396 F2d 110, 114 (CA 2, 1968). Likewise, the Ninth Circuit has held that joint representation is permitted unless specific prejudice appears. *United States v Nystrom,* 447 F2d 1350, 1351 (CA 9, 1971), *cert den* 404 US 993; 92 S Ct 542; 30 L Ed 2d 545 (1971); *Davidson v Cupp,* 446 F2d 642, 643 (CA 9, 1971). The Ninth Circuit has further written that:

"the appropriate inquiries are: Did the representation deprive either or both of the defendants of the undivided loyalty of counsel? Did counsel have to, or did he in fact 'slight the defense of one defendant for that of another'? *(Peek v United States,* 321 F2d 934, 944 [CA 9, 1963], *cert den* 376 US 954; 84 S Ct 973; 11 L Ed 2d 973 [1964].)" *Sanchez v Nelson,* 446 F2d 849, 850 (CA 9, 1971).

We are not convinced that counsel's loyalty was here so divided nor that defendant's defense was "slighted".

In his closing argument, defense counsel stated that there was "one salient fact" which could not be overlooked, *viz.;* "that Mr. Haywood was caught

or stopped right at the curb in front of the Hudson's parking lot". He further said: "Haywood was never out of the immediate grasp of the security guards. He did not move into the parking lot, according to their testimony. And yet, the goods that were supposed to be on him were three cars into the parking lot." Defendant asserts that this prejudiced him while strengthening Haywood's defense. We hold that this may have been a mistaken assertion by counsel which in the context of this case is covered under the *Degraffenreid, supra,* rationale, and is not reversible error.

We find here no actual prejudice. To hold otherwise would be merely speculative; and, as the Seventh Circuit has said: "The existence of a conflict of interest, to warrant the result here sought, [reversal] must be founded on something more than mere speculation or surmise". *United States v Gallagher,* 437 F2d 1191, 1194 (CA 7, 1971), *cert den* 402 US 1009; 91 S Ct 2190; 29 L Ed 2d 430 (1971). See, also, *People v Gutierrez,* — Colo —; 511 P2d 20, 22 (1973). Having found no specific instance of prejudice resulting from a real conflict of interests, the defendant has not been denied effective assistance of counsel.

Affirmed.

All concurred.