PEOPLE v OSBORN

1. CONSTITUTIONAL LAW—CRIMINAL LAW—ATTORNEY AND CLIENT—
RIGHT TO COUNSEL—CODEFENDANTS.

   The right to counsel under the United States and Michigan
   Constitutions does not guarantee separate counsel for each
   criminal codefendant.

2. CONSTITUTIONAL LAW—CRIMINAL LAW—ATTORNEY AND CLIENT—
JOINT REPRESENTATION—PREJUDICE.

   Joint representation of criminal codefendants is improper where
   prejudice results in a denial of effective assistance of counsel;
   prejudice results where the interests of one defendant conflict
   with the interests of another defendant such that defense
   counsel had to, or did in fact, slight the defense of one defend-
   ant for that of another.

3. CONSTITUTIONAL LAW—CRIMINAL LAW—ATTORNEY AND CLIENT—
JOINT REPRESENTATION—PREJUDICIAL CONFLICT.

   A prejudicial conflict must be based upon something more than
   mere speculation; joint representation of criminal codefendants
   was not erroneous where a defendant was not harmed by his
   codefendant's failure to testify, the two defendants presented
   the same theory of the case to the jury, and nothing in the
   evidence tended to exculpate one of the two or tended to
   present one as more culpable than the other.

4. CONSTITUTIONAL LAW—CRIMINAL LAW—ATTORNEY AND CLIENT—
EFFECTIVE ASSISTANCE OF COUNSEL.

   The manner in which a defendant's counsel conducted his defense

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 21 Am Jur 2d, Criminal Law § 319.

   Duty of court when appointing counsel for defendant to name
   attorney other than one employed by, or appointed for, a co-
   defendant. 148 ALR 183.

[4] 21 Am Jur 2d, Criminal Law §§ 315, 321.

[5, 6] 21 Am Jur 2d, Criminal Law §§ 185, 494.

   75 Am Jur 2d, Trial § 876 *et seq.*

[7] 29 Am Jur 2d, Evidence §§ 785–788.

[8] 21 Am Jur 2d, Criminal Law §§ 335–337.

does not justify reversal of his conviction for robbery because of the alleged incompetence of his counsel under either the sham standard or the serious error standard where the actions of counsel could have appeared to be proper trial tactics at the time of trial, the primary defense theory was that the defendant was unaware of another's plans to commit robbery, defense counsel's remarks during closing argument did not conflict with the defendant's testimony, and from the record it does not appear that the defendant would be acquitted if a new trial were granted.

5. ROBBERY—UNARMED ROBBERY—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES.

Refusal of a request for an instruction on lesser included offenses of assault and battery or aggravated assault was erroneous in a trial for unarmed robbery where there was evidence to support those offenses and the defendant's testimony that he did not intend to rob made that element a question of fact for the jury.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES.

Error occurs in failing to give instructions on lesser included offenses, where no request is made, only if the instructions have the effect of affirmatively excluding those offenses from the consideration of the jury.

7. ROBBERY—EVIDENCE—PHOTOGRAPHS—COURTS—DISCRETION—PREJUDICE.

Admissibility of photographs is a matter for the sound discretion of the trial court; photographs which were instructive to show the material fact of a defendant's intent in striking a victim during a robbery and not merely calculated to excite passion and prejudice were properly admitted.

8. ROBBERY—WITNESSES—STATEMENTS BY CODEFENDANT—RIGHT TO CONFRONTATION—CONSTITUTIONAL LAW.

A defendant in a trial for robbery was not denied the right to confrontation because a witness testified as to a statement made by his codefendant where the statement was not inculpatory regarding the defendant, the witness's testimony did not substantially contradict the defendant's own testimony, and the statement was not inconsistent with the primary issue of whether or not the defendant intended to rob the victim.

Appeal from Hillsdale, Kenneth G. Prettie, J.

Submitted June 3, 1975, at Lansing. (Docket No. 20943.) Decided August 27, 1975. Leave to appeal denied, 395 Mich 798.

Norman D. Osborn was convicted of unarmed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Lawrence L. Hayes, Jr.,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, and *Lee W. Atkinson,* Special Assistant Attorney General, of counsel), for the people.

*Arthur J. Tarnow,* for defendant.

Before: BASHARA, P. J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. The defendant appeals from his conviction of unarmed robbery, MCLA 750.530; MSA 28.798, by a jury trial in Hillsdale County Circuit Court. He was sentenced to a term of 5 to 15 years in prison.

After selection of the jury, the trial judge informed the defendant and his codefendant, Douglas Dunning, that they had a right to employ their own attorney or to be represented by the county public defender, who had represented them at their joint preliminary examination. They chose to continue with the public defender.

George Burlew testified for the prosecution that he had been invited by three women to go with them to their apartment. While they were on their way in his car, Burlew sat in the back seat while the women occupied the front seat. A car which had been following overtook them on a gravel road. The women got out of Burlew's car and left the scene. Burlew testified that he exited the car

with a lug wrench in his hand to protect himself. Three men from the other car approached him and beat him until he was unconscious. He was unable to recognize any of the three men. When he awoke, his wallet containing $38 was missing.

The next witness was Chris Marsh, who at the time of trial was in the county jail on other charges. He testified that he discussed Burlew having a lot of money on his person with Osborn, Dunning, and the three women. The six planned to rob Burlew. The three men followed Burlew's car and overtook it. Marsh testified that after Osborn and Dunning had beaten Burlew, Marsh took his wallet. Marsh had not been charged with any crime stemming from the events of that night.

Two of the three women testified that they had related Burlew's proposal to take them to a motel to the defendants. They also testified that the group had planned to rob Burlew. One received $5 from Marsh several days after the robbery, but did not see money being given to anyone else. The other testified that either Osborn or Dunning stated that they had beaten Burlew. Apparently, the third woman was defendant Osborn's sister.

The defense theory was that Chris Marsh was the only one who intended to rob Burlew and that the two defendants assaulted him in order "to protect the honor" of the women. Defendant Osborn was the only defense witness to testify. He stated that he followed Burlew's car until it became apparent that they were not going to his sister's home. When it stopped in a secluded area, the defendant pulled up behind Burlew's car. Burlew came at Osborn with the lug wrench, and Osborn struck him in self-defense a number of times. Osborn testified that he did not know that Marsh had taken the money until after they had

returned to the car. Defendant Dunning did not take the witness stand.

On appeal, defendant Osborn argues that error was committed when he was denied his constitutional right to effective assistance of counsel. Second, he contends that the trial court issued erroneous instructions which affirmatively excluded the possibility of a jury verdict on lesser included offenses and which omitted defendant's theory of the case. The defendant also contends that admission of certain allegedly inflammatory pictures was erroneous. Fourth, he contends the testimony of a prosecution witness violated *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). Finally, he asserts that the district court lacked proper jurisdiction to conduct the preliminary examination.

The right to counsel under the United States and Michigan Constitutions does not guarantee separate counsel for each codefendant. *People v Marshall,* 53 Mich App 181, 189; 218 NW2d 847 (1974). *People v Hilton,* 26 Mich App 274, 276; 182 NW2d 29 (1970). See also *People v Chacon,* 69 Cal 2d 765; 73 Cal Rptr 10; 447 P2d 106, 111 (1968). However, joint representation becomes improper where prejudice results in a denial of effective assistance of counsel. *Glasser v United States,* 315 US 60; 62 S Ct 457; 86 L Ed 680 (1942). *People v Gardner,* 385 Mich 392; 189 NW2d 229 (1971). Joint representation results in prejudice where the interests of one defendant conflict with another defendant such that defense counsel had to, or did in fact, slight the defense of one defendant for that of another. *People v Marshall,* 53 Mich App 181, 190. See also *Sanchez v Nelson,* 446 F2d 849, 850 (CA 9, 1971).

Thus, we must examine the circumstances of the

present case to determine whether defendant Osborn was deprived of the undivided loyalty of counsel. The defendant maintains that a conflict of interest was manifested by the following: failure to request instructions on defendant's theory of the case perhaps for fear of emphasizing the codefendant's silence; making a brief closing argument for the same reason; attributing defendant Osborn's theory to the codefendant also; failure to pursue certain testimony by a prosecution witness.

We can discern no conflict of interest after carefully examining the present record. A prejudicial conflict must be based upon something more than mere speculation. *People v Marshall,* 53 Mich App 181, 191. The codefendant's failure to testify and the fact that a blanket defense was used could not, under these facts, have harmed defendant Osborn. *Cf. People v Dockery,* 20 Mich App 201; 173 NW2d 726 (1969), *Morgan v United States,* 396 F2d 110 (CA 2, 1968). The two defendants chose to present the same theory to the jury as to what had happened on the night in question. Nothing in the evidence tended to exculpate one of the two or tended to present one as more culpable than the other. Under these circumstances, joint representation was not erroneous.

The next issue is whether defendant was denied effective assistance of counsel by the manner in which his counsel conducted his defense. In addition to the allegations listed previously, he asserts incompetence in certain comments made during closing argument, in the failure to request instructions on self-defense and on lesser included offenses, and in failing to move for a separate trial.

The circumstances of this case do not justify reversal under either the sham standard or the serious error standard of *People v Degraffenreid,*

19 Mich App 702; 173 NW2d 317 (1969). Many of the examples of alleged incompetence could at the time have appeared to be proper trial tactics. The primary defense theory was that the defendant was unaware of Marsh's plan to rob Burlew. The defendant made this clear during his testimony, and the trial court instructed the jury as to this theory.

As to defense counsel's remarks during closing argument, none conflicted with the defendant's own testimony. Counsel only admitted that the defendant had struck the victim several times and pointed out that it was Marsh who had had larcenous intent at the time of the beating. Further, we cannot say, after studying the record, that if a new trial is ordered the defendant may well be acquitted. *Id.* at 718.

The next defense argument is that the trial court issued erroneous instructions which affirmatively excluded the possibility of a jury verdict on lesser included offenses. The trial court stated:

"There are two separate verdicts for each of the two defendants. One verdict would be not guilty; the other would be guilty as charged."

In addition, the trial court gave the jury a form containing only the possible verdicts under the principal charge. There was no defense request for instructions on lesser included offenses.

Contrary to the appellate prosecutor's assertions, there was evidence to support the offenses of assault and battery or aggravated assault. Defendant's testimony that he did not intend to rob made that element a question of fact for the jury. As a result, it would have been erroneous to refuse a request for an instruction on either of these lesser included offenses. *People v Herbert Van Smith,*

*Jr.,* 388 Mich 457; 203 NW2d 94 (1972). However, since no request was made, error occurred only if the instructions had the effect of affirmatively excluding these offenses from the consideration of the jury. *People v Lemmons,* 384 Mich 1; 178 NW2d 496 (1970).

The *Lemmons* rule has been strictly interpreted by this Court to not include instructions such as were given in the present case. See *People v White,* 54 Mich App 342; 220 NW2d 789 (1974), *People v Bradley,* 54 Mich App 89; 220 NW2d 305 (1974), *People v Hoffmeister,* 52 Mich App 219; 217 NW2d 58 (1974), *rev'd on other grounds* 394 Mich 155; 229 NW2d 305 (1975).[1] The fact that the trial court furnished a form which did not include the lesser offenses does not, in our opinion, change this result.

The defendant raises other alleged errors concerning the trial court's instructions. However, these errors have not been preserved for review since there was no request for specific instructions at the trial nor were there any objections at that time. GCR 1963, 516.2. *People v Flowers,* 30 Mich App 579; 186 NW2d 777 (1971). In any event, the arguments are without merit. *People v Cannon,* 252 Mich 182, 184; 233 NW 210 (1930). *People v Wheat,* 55 Mich App 559, 563; 223 NW2d 73 (1974). *People v Cardenas,* 21 Mich App 636; 176 NW2d 447 (1970).

As to defendant's assertion that inflammatory

---

[1] In *People v Herbert Van Smith, Jr.,* 388 Mich 457, 462, (now Chief) Justice T. G. KAVANAGH stated: "[T]he court's obligation to instruct the jury on the applicable law gives rise to a right in the jury to be properly instructed whether requested by counsel or not. . . . When the evidence would support a conviction on lesser included offenses the court's failure to instruct thereon can neither be excused nor waived by the parties." However, only one other Justice concurred with this opinion, and the statement has not been followed as the law as of this time. *See People v King,* 51 Mich App 788, 791; 216 NW2d 76 (1974).

photographs were admitted, we have examined the photographs and do not agree with this contention. The admissibility of photographs is a matter for the sound discretion of the trial court. *People v Eddington,* 387 Mich 551, 562–563; 198 NW2d 297 (1972). We conclude that the photographs were instructive to show the material fact of defendant's intent in striking Burlew and were not merely calculated to excite passion and prejudice. See *People v Falkner,* 389 Mich 682, 685; 209 NW2d 193 (1973).

During the direct examination of one of the women who were alleged to have participated in the scheme to rob the victim, she testified:

"*A.* Okay. It was either Norman or Doug said something about they beat him up, and Chris said he took the wallet, and Doug smashed his knee or something, hit his knee when he rammed the car into a telephone pole or tree or whatever it was."

Defendant argues that since this statement is potentially attributable to his codefendant, who was not subject to cross-examination, his sixth amendment right of confrontation was violated under the theory of *Bruton v United States, supra.* See *Roberts v Russell,* 392 US 293; 88 S Ct 1921; 20 L Ed 2d 1100 (1968). *Bruton* involved the introduction of a codefendant's confession which implicated defendant Bruton. The codefendant, however, did not testify; thus the defendant was unable to question him concerning the content and circumstances surrounding the confession. It is unnecessary to apply the *Bruton* principles to the facts of the present case because of the content of the statement. The witness's testimony did not substantially contradict that of the defendant him-

self. The statement's connotations perhaps did not support his theory of self-defense, but the statement in no way was inconsistent with the primary issue of the case—whether or not the defendant intended to rob Burlew. Since the statement was not inculpatory, *Bruton* is not applicable. See also *Dutton v Evans,* 400 US 74; 91 S Ct 210; 27 L Ed 2d 213 (1970).

Appellant's contention that district courts lack criminal jurisdiction to conduct preliminary examinations has recently been rejected by the Michigan Supreme Court in *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

The defendant's conviction is affirmed.