# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SALAM AL-SAWADI,

Defendant-Appellant.

UNPUBLISHED
July 18, 2017

No. 331684
Wayne Circuit Court
LC No. 15-007224-01-FC

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree arson, MCL 750.72, and preparing to burn real property, MCL 750.79(1)(d)(*vi*). The trial court sentenced defendant to 7 to 15 years in prison for arson and 2 to 10 years in prison for preparing to burn property. We reject defendant's claim of ineffective assistance of counsel, but vacate in part the trial court's denial of defendant's motion for a new trial and remand for further proceedings.

Defendant and his son, Abass Al-Sawadi, were both charged with first-degree arson, preparing to burn real property, and placing an injurious substance near property, MCL 750.209, for the burning of a house on Rutland Street in Detroit on July 29, 2015. Defendant and Abass were tried jointly, before a single jury. The same attorney represented both defendants at trial. The jury acquitted Abass of all charges, acquitted defendant of the charge of placing an injurious substance, and convicted defendant of the remaining charges.

The principal witness at trial, Sabreen Al-Maliki, testified that her family and defendant's family had known each other for several years. Their relationship soured after Al-Maliki's brother ended his engagement to one of defendant's daughters. According to Al-Maliki, defendant's daughter, Doa Al-Sawadi, and codefendant Abass Al-Sawadi began sending threatening text messages to Al-Maliki and her brother, respectively. Al-Maliki testified that, at approximately 1:30 or 2:00 a.m. on July 29, 2015, she was in her bedroom when she heard voices outside. Looking out the window, she saw a fire and saw defendant and his son Abass running toward defendant's car, which she recognized by the chrome detailing her brother had added. Fire investigators determined that gasoline was used to start the fire at the threshold of the front door. Defendant and Abass both offered alibi testimony at trial.

After trial, defendant sought a new trial on the ground of newly discovered evidence. The motion was supported by affidavits from defendant's daughter Doa, defendant's wife Badria

-1-

Al-Sahalni, and an attorney, Helal Farhat, each of whom averred that Al-Maliki had made statements indicating that she would be willing to recant her testimony. The trial court found that the affidavits were all based on inadmissible hearsay, and therefore it denied the motion.

Defendant argues that the trial court failed to comply with MCR 6.005(F) before allowing him and his son to be jointly represented at trial. He further argues that he was denied his right to the effective assistance of counsel because of counsel's conflict of interest due to the joint representation. Although the trial court questioned both defendants at trial about the joint representation, defendant did not raise any issue regarding the trial court's compliance with MCR 6.005(F). Therefore, that issue is unpreserved and review is limited to ascertaining whether plain error affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Defendant also did not raise any claim regarding a denial of due process or a denial of the effective assistance of counsel, either before or after trial. Therefore, review of defendant's claim of ineffective assistance "is limited to mistakes apparent from the record." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

"Th[e] right to counsel includes the right to effective assistance of counsel." *People v Meissner*, 294 Mich App 438, 459; 812 NW2d 37 (2011). The general rule is that effective assistance of counsel is presumed and the defendant bears a heavy burden of proving otherwise. *People v Eloby (After Remand)*, 215 Mich App 472, 476; 547 NW2d 48 (1996). To establish a claim of ineffective assistance of counsel, the defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

"Requiring or permitting a single attorney to represent codefendants . . . is not *per se* violative of constitutional guarantees of effective assistance of counsel." *Holloway v Arkansas*, 435 US 475, 482; 98 S Ct 1173; 55 L Ed 2d 426 (1978). If there is no objection to joint representation at trial, the trial court "may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." See *Cuyler v Sullivan*, 446 US 335, 346-347; 100 S Ct 1708; 64 L Ed 2d 333 (1980). Thus, the court need not inquire about a possible conflict unless it knows or has reason to know that a conflict exists. *Id*. Further, the defendant is not entitled to relief unless he shows "that an actual conflict of interest adversely affected his lawyer's performance." *Id*. at 348.

Although *Cuyler* indicates that a trial court need not inquire into a possible conflict of interest where the issue is not raised, the Michigan Court Rules do require such an inquiry. MCR 6.005(F). The trial court did not fully comply with the court rule. Although defendant and his son tacitly indicated during questioning that they wanted to proceed with the same attorney, the trial court failed to make a finding on the record "that joint representation in all probability will not cause a conflict of interest . . . ." MCR 6.005(F)(3). That was plain error. Nevertheless, a violation of the court rule does not, by itself, violate a defendant's right to counsel; the defendant must still show that an actual conflict of interest existed that affected the adequacy of counsel's representation. *People v Gamble*, 124 Mich App 606, 609-611; 335 NW2d 101 (1983); *People v Kirk*, 119 Mich App 599, 601-604; 326 NW2d 145 (1982) (MacKenzie, P.J.).

The record does not show that an actual conflict of interest existed. Both defendant and his son offered alibis. Abass offered testimony that he was working at an overnight construction project in Flint, where he was seen by several coworkers, at the time of the offense. Defendant provided testimony that he was at home asleep at the time of the offense, and he called his daughter to confirm his testimony. There is no conflict of interest arising from joint representation when both defendants present the same theory of the case and neither one attempts to exculpate himself at the expense of the other. *People v Osborn*, 63 Mich App 719, 724; 234 NW2d 767 (1975). Although defendant and Abass offered separate alibis for the night of the offense, neither alibi required the jury to disbelieve one defendant at the expense of the other. Defendant posits that counsel's failure to elicit testimony from Al-Maliki that defendant was not involved in sending the threatening text messages may have led the jury to conclude that defendant was responsible for them. However, Al-Maliki made it clear on direct examination by the prosecutor that the messages were sent by Abass and his sister. Thus, it was reasonable for counsel not to question her further about whether defendant had sent them. Because the record fails to reveal an actual conflict of interest that affected the adequacy of counsel's representation, we reject defendant's claim of error.

Defendant next argues that the trial court erred in denying his motion for a new trial. We review the trial court's decision for an abuse of discretion. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014).

Defendant moved for a new trial on the basis of newly discovered evidence that Al-Maliki falsely testified at trial that he and his son were involved in the offense. In support of the motion, defendant submitted affidavits from (1) his daughter, Doa Al-Sawadi; (2) his wife, Badria Al-Sahalni; and (3) his wife's attorney, Helal Farhat. The trial court ruled that all three affidavits were based on inadmissible hearsay and denied defendant's motion.

To obtain a new trial on the basis of newly discovered evidence, the defendant must show that (1) the evidence itself, and not just its materiality, was newly discovered; (2) the evidence was not cumulative; (3) the evidence would probably cause a different result upon retrial; and (4) the defendant could not, with reasonable diligence, have discovered and produced the evidence at trial. *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003). The evidence must also be admissible. See *People v Darden*, 230 Mich App 597, 605-606; 585 NW2d 27 (1998). Newly discovered evidence in the form of inadmissible hearsay is not grounds for granting a new trial. See *People v Miller*, 141 Mich App 637, 641-643; 367 NW2d 892 (1985).

The trial court erred in part in evaluating this issue. Hearsay "is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is not admissible except as provided by [the] rules [of evidence]." MRE 802. Doa Al-Sawadi's proposed testimony is that Al-Maliki told her that "she deeply regrets lying to the court," that "my father and brother had nothing to do with" the fire, and that she lied in an attempt to persuade Al-Sawadi's mother to drop charges in another case filed against Al-Maliki's brothers. Such evidence cannot be offered for its truth, i.e., to prove that Al-Maliki did, in fact, lie at trial and regrets it. However, as an inconsistent statement made by Al-Maliki, the statement that defendant had nothing to do with the fire can be offered to impeach Al-Maliki's credibility, see *People v Barbara*, 400 Mich 352, 363; 255 NW2d 171 (1977), and newly discovered "impeachment evidence may be grounds for a new trial

-3-

if it satisfies the four-part test set forth in *People v Cress*" and there is "a material, exculpatory connection . . . between the newly discovered evidence and significantly important evidence presented at trial," *People v Grissom*, 492 Mich 296, 299-300; 821 NW2d 50 (2012).

The trial court ruled that an evidentiary hearing was not necessary based on Doa's affidavit, stating simply that it was "hearsay . . . ." The trial court failed to recognize the impeachment value of the proposed testimony, however. Accordingly, we vacate in part the trial court's ruling and remand for an evidentiary hearing and reconsideration of defendant's motion with respect to Doa's proposed testimony in accordance with *Grissom*. We express no opinion regarding the correct outcome of the hearing and hold merely that a hearing is required.

The trial court properly concluded that the other witnesses' proposed testimony did not warrant a new trial. Al-Sahalni provided an affidavit in which she stated that she was in an attorney's office at some unspecified time when she received a telephone call from an unnamed local imam who told her that Al-Maliki was with him and would "come and say that she lied under oath" if paid to do so. This was properly rejected as hearsay because, even if Al-Maliki's statement to the imam would be admissible for a nonhearsay purpose (i.e., to impeach Al-Maliki's trial testimony), the imam's statement to Al-Sahalni qualifies as hearsay because it was being offered to prove the truth of the imam's statement (i.e., to prove what was said to the iman by Al-Maliki). "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in [the] rules [of evidence]." MRE 805. Defendant has not identified a hearsay exception that would allow admission of the imam's statement to Al-Sahalni. Moreover, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." MRE 602. Unlike her daughter, Al-Sahalni did not have personal knowledge of anything Al-Maliki said; she repeated what the imam told her about his conversation with Al-Maliki.

The affidavit from Farhat is likewise based on inadmissible hearsay. Farhat averred that he was present when Al-Sahalni "received a phone call from a local Imam, a shiek, who told her that the other party that is involved here is willing to come and say that they lied under oath, if they were to pay them money." It is unclear from the affidavit whether Farhat actually overheard the telephone call or was only reporting what he was told by Al-Sahalni. Again, however, even if Farhat personally overheard the conversation, the imam's statement to Al-Sahalni qualifies as inadmissible hearsay because it was being offered to prove the truth of the imam's statement to Al-Sahalni, and defendant has not identified a hearsay exception that would allow admission of that statement. Similarly, Farhat did not have personal knowledge of anything Al-Maliki said; he either repeated what the imam said to Al-Sahalni or repeated what Al-Sahalni told him the imam told her.

Accordingly, the trial court did not abuse its discretion in ruling that Al-Sahalni's and Farhat's affidavits did not require a new trial.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood