PEOPLE *v.* McKEIGHAN.

1. CRIMINAL LAW—ROBBERY—INFORMATION—SUFFICIENCY—PRINCIPAL AND ACCESSORY—DISTINCTION ABOLISHED.

An information under 3 Comp. Laws 1915, § 15208, charging defendant as principal with the commission of the crime of assault and robbery, not being armed with a dangerous weapon, was sufficient to sustain a conviction, although the evidence showed that defendant advised and counseled the commission of the act, since the distinction previously

existing between principals and accessories was abolished by 3 Comp. Laws 1915, § 15757.

2. SAME—ROBBERY—AIDING AND ABETTING—MONEY LOST IN GAMBLING—INTENT.

In such prosecution, in view of 2 Comp. Laws 1915, § 7795, providing that money or goods lost in gambling may be recovered by the loser, evidence that defendant advised and counseled the forcible recovery of money lost in gambling, *held*, to require the submission to the jury of the question of intent.[1]

3. SAME—INSTRUCTIONS—TRIAL—INTENT.

Instructions that did not clearly state to the jury that it was necessary that the defendant had a criminal intent to rob, steal, or take from the person property that could have been the subject of larceny, *held*, insufficient.

4. SAME—ROBBERY—ASSAULT—SIMPLE ASSAULT.

An intent to commit a simple assault would not justify a conviction upon the charge alleged in the information.

5. SAME—GOOD CHARACTER—INSTRUCTIONS—TRIAL.

Good character is a proper element to be considered by the jury in every criminal case where an attempt is made to show good character, and the limitation by the court of evidence of good character to doubtful and circumstantial cases, *held*, improper and reversible error.

6. APPEAL AND ERROR—CRIMINAL LAW—SAVING QUESTION FOR REVIEW.

In a criminal prosecution, exception to the argument of the prosecutor, without asking for an opinion or ruling of the court thereon, will not be considered on error.

Error to Genesee; Black, J. Submitted January 17, 1919. (Docket No. 118.) Decided April 3, 1919.

William H. McKeighan was convicted of assault and robbery, not being armed with a dangerous weapon, and sentenced to imprisonment for not less than two years nor more than fifteen years in the State reformatory and house of correction at Ionia. Reversed.

*Edward N. Barnard* (*Thomas F. Stockton*, of counsel), for appellant.

---

[1]See note in 14 L. R. A. 226.

*Roy E. Brownell,* Prosecuting Attorney, and *Harry G. Gault,* Assistant Prosecuting Attorney, for the people.

KUHN, J. It was the claim of the people on the trial of this case that the defendant induced certain other parties, viz., Harry Davis, Walter Davidson, William Cooper and Joseph Feeney, to commit the crime of assault and robbery, not being armed with a dangerous weapon (3 Comp. Laws 1915, § 15208), upon one Fred Spencer. The information charges the defendant as a principal in the commission of this offense. He was tried separately from the other parties involved, they having pleaded guilty to the charge of assault and robbery. The testimony tended to show that on the evening of November 24, 1917, Davis, Cooper, Davidson and Feeney were at the home of Mr. and Mrs. Cooper, which was adjoining to the apartments occupied by the defendant and his family in the same building, both of these apartments being over a garage belonging to the defendant. That during the evening Spencer came to the Cooper home and there engaged in a game of dice or playing what is known as "craps." It is further claimed that after the game had been going on for some time, the defendant came to the apartment, but took no part in the playing of the game. That Spencer won some money from the other men, it is claimed by the use of crooked dice. The testimony further shows, and it is the claim of the prosecution, that the defendant advised some of these men to go and get their money back, and that he told Mr. Cooper, who was to take Spencer in his automobile when he left the apartment, to stop the automobile so that the others implicated might get their money back and have a settlement with Spencer. Witness Davis, who had previously pleaded guilty to an assault and robbery charge, testified with

205—Mich.—24.

reference to his conversation with the respondent as follows:

"He said, 'Make him give it to you.' He said, 'If I was you I would make him give it to me and stick him up, and make him give it to me.' Then he went over and spoke to Cooper a minute. Then he told me that Cooper said he would stop at North and Parkland provided there was no row."

There is testimony to the effect that the respondent called Spencer into a room before he left, where the sum of $20 was given by Spencer to the respondent as "kick in" money after threats of violence were made by respondent. That afterwards Cooper did stop his automobile for the purpose of lighting the tail light thereon, and that thereafter Davis, Feeney and Davidson did take from Spencer certain money. The evidence further tends to show that Spencer had $100 on his person when he joined in the game, and that at the time that he was claimed to have been robbed he had $133, all of which was taken from him, which it is claimed tended to show that he was robbed of $100 which he did not win at gambling, but which he had when he joined in the game. The trial resulted in a conviction of respondent, and the case is brought here by writ of error after sentence.

It is claimed that the information is insufficient, in that it charges the respondent as a principal, and that there is nothing in the information to inform the respondent of what connection it was claimed he had in the commission of the offense other than that he directly committed it, and that although the statute (3 Comp. Laws 1915, § 15757) provides that an accessory shall be indicted, tried and punished as a principal, it does not intend to permit an information to be drawn without giving sufficient facts to inform the respondent of the exact nature of the charge. With this contention we do not agree, as the statute has clearly

abolished all distinctions previously existing between principals and accessories, and in express terms applies to indictments (including informations). In *People* v. *Wycoff*, 150 Mich. 449, this court reiterated the provisions of the statute and said:

"The statute has abrogated all distinctions between principals and accessories, and between principals in the first and second degrees. He who aids and abets is now a principal."

The information was clearly sufficient to warrant the conviction.

Counsel for the respondent claim that the trial court erred in refusing to give the following request to charge:

. "If you find that the money alleged to have been stolen was won in an illegal game of dice, from Davis and the other parties who participated in securing a return of the same, then that money would not be the property of Spencer and your verdict must be not guilty,"

—and contend that the present case is ruled by the case of *People* v. *Henry*, 202 Mich. 450. In that decision it is stated that—

"Our statute [2 Comp. Laws 1915, § 7795] gives a right to the loser to recover the money or property lost in a gambling game, and, among other actions, gives that of replevin, thus recognizing the money or property as belonging to him."

The statute in question provides:

\* \* \* "and any person that shall lose any sum of money, or any goods or articles of value, by playing or betting on cards, or by any other device in the nature of such playing and betting, and shall pay or deliver the same or any part thereof to the winner, the person so paying or delivering the same may sue for and recover such money in an action for money had and received, to the use of the plaintiff; and such goods or other articles of value in an action of replevin. or the

value thereof in an action of trover, or in a special action on the case."

The statute points out that where money is lost, the loser may recover from the winner the money illegally obtained in an action for money had and received, and further provides that goods or other articles of value may be recovered by an action of replevin. A careful reading of this statute has satisfied us that it was the intent of the legislature to provide that the action of replevin may be resorted to where the money could be positively identified, but as it is quite apparent that this would be difficult to do in most instances, the further action for money had and received is provided for in cases where the money cannot be identified. In the instant case the testimony conclusively shows that the money was commingled with the money which Spencer had on his person at the time he started the game, and that it would have been hard to identify the exact money which was lost in the game. Moreover, the record shows that it is the claim of the people that more money was taken from Spencer than he actually won in the game. Under the facts in this case, in our opinion, it clearly became a question for the jury to determine whether or not the respondent aided and abetted the commission of the alleged offense, and the subject for inquiry now is whether the various elements constituting the crime were properly submitted to the jury in the charge by the trial court. One of the essential elements of this crime that it is necessary to prove beyond a reasonable doubt is that the respondent had a felonious intent at the time of counseling, aiding and abetting the commission of the said offense of robbery. It was therefore necessary that the learned trial judge should give clear and explicit instructions as to this important feature of the alleged offense. The learned trial judge charged with reference to this as follows:

"Now if you find by the evidence in this case, beyond a reasonable doubt, that the respondent counseled, advised and knew and had a criminal intent at the time that he advised with the other men, and you find the other men did proceed to hold up, rob, and take the money away from the man Spencer, then under our law the respondent is equally guilty with the other parties who absolutely took the money away from him."

This, in our opinion, was not a sufficient statement of the necessary intent. It should have been clearly stated that it was necessary that the respondent had a criminal intent to rob, steal or take from the person of Fred Spencer property that could have been the subject of larceny. An intent to commit a simple assault would not justify a conviction upon the charge alleged in the information. *People* v. *Belton,* 160 Mich. 416. It may be said that giving the 36th request to charge later in the charge cured this, when the court said:

"If the respondent conspired to commit the offense of assault, but did not consent and was not a privy in fact to the commission of a robbery, then your verdict must be not guilty, for there can be no responsibility against one who is not himself engaged in the acts of his associates, unless it is within the scope of the combination to which he is a party, and this you will determine from all the evidence in the case."

We would not be inclined to set aside the conviction if this were the only error in the case, as, reading the whole charge together, the jury may not have been misled thereby, but in view of the fact that the conviction is reversed on another ground, we deem it proper to say that when the intent is such an important factor in the commission of an offense as in the charge against this respondent, this element should be clearly and definitely outlined to the jury.

On the trial a number of witnesses were sworn on

behalf of respondent to show his good reputation in the community in which he lived. With reference to good character the court charged the jury as follows:

"In doubtful cases, good character has been used, or in circumstantial cases, to surround and assist and aid a man."

The limitation by the court of evidence of good character to doubtful and circumstantial cases is an improper limitation, as good character is a proper element to be considered by the jury in every criminal case where an attempt is made to show good character. As was early said in the case of *People* v. *Garbutt*, 17 Mich. 9 (97 Am. Dec. 162), by Chief Justice COOLEY:

"Good character may not only raise a doubt of guilt which would not otherwise exist, but it may bring conviction of innocence. In every criminal trial it is a fact which the defendant is at liberty to put in evidence; and, being in, the jury have a right to give it such weight as they think it entitled to."

See, also, *People* v. *Laird*, 102 Mich. 135, and footnote, where the Michigan cases on this subject are reviewed; also *People* v. *Wilson*, 170 Mich. 669 (41 L. R. A. [N. S.] 216. We think that this failure to clearly instruct the jury upon this question was error prejudicial to the defendant, and for this reason alone the case should be reversed.

Complaint is made as to the argument of the prosecuting attorney, it being claimed that it was highly prejudicial to respondent's rights. We do not think, however, that the question is before us, as only twice during the time that the argument objected to was being made, did counsel object to what was being said. The first objection was sustained, and the part complained of was retracted by the prosecuting attorney. In the second instance, counsel for respondent simply took an exception to the argument without ask-

ing for an opinion or ruling of the court thereon. In *People* v. *Sartori*, 168 Mich. 308, it was expressly held that such an exception would not be considered, under repeated rulings of this court.

Exception was also taken to the cross-examination of the respondent and some of the witnesses. We have examined these exceptions and think that the questions asked respondent on the cross-examination for the purpose of attacking his credibility as a witness, were matters largely within the discretion of the circuit judge, and we are satisfied, in view of this record, that the discretion in this regard was not abused.

However, for the error above referred to, the conviction of the respondent must be set aside and a new trial granted.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred. OSTRANDER, J., did not sit.