PEOPLE *v.* DOCKERY

1. RAPE—FORCE—SUBMISSION—EVIDENCE—SUFFICIENCY.

  The crime of rape is established where the evidence shows that
  the accused knew when he assaulted the complainant that she
  was submitting against her will, out of fear and apprehen-
  sion, and as a result of her worn-down condition from pre-
  vious rapes by the accused's accomplices (MCLA § 750.520).

2. RAPE—DEGREE OF RESISTANCE—OVERCOME WILL.

  The degree of resistance required to be shown in rape cases
  is "resistance to the utmost" but a complainant's failure to
  resist is excused if her will is overcome by fear of her
  attacker (MCLA § 750.520).

3. RAPE—ABSENCE OF FORCE—PREVIOUS RAPES—OVERBORNE WILL.

  Jury could properly find that defendant knowingly took advan-
  tage of complainant's fear and overborne will induced by
  threats and force used by his accomplices where defendant,
  even though he did not actually force or threaten complain-
  ant, had sexual intercourse with her immediately after his
  two accomplices had raped her (MCLA § 750.520).

4. RAPE—SUBMISSION DESPITE RESISTANCE.

  When a rape complainant has already been forced to submit
  despite her utmost resistance and reasonably believes from
  all the circumstances that further resistance would be futile,
  and defendant is aware of this at the time he sexually
  assaults her, he may not later argue that complainant's fail-
  ure to resist precludes a rape conviction.

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 44 Am Jur, Rape §§ 4, 6, 7, 104.
[6, 7] 44 Am Jur, Rape §§ 33–35.
  21 Am Jur 2d, Criminal Law § 124.
[8–10, 12] 21 Am Jur 2d, Criminal Law § 319.
[11] 21 Am Jur 2d, Criminal Law §§ 127–129.

5. CRIMINAL LAW—PARTICIPATION—LIABILITY.

One may not participate in a crime to the extent of physically performing an act constituting an essential element of that crime while knowing that complainant had been forced against her will to submit to the same acts immediately beforehand without being liable for the consequence.

6. CRIMINAL LAW—ACCESSORIES AND PRINCIPALS—STATUTE.

The distinction between accessories and principals has been abolished by statute and since the statute makes an aider and abetter into a principal it is unnecessary to charge a defendant in any form other than as a principal (MCLA § 767.39).

7. CRIMINAL LAW—INSTRUCTIONS TO JURY—INFORMATION—AIDING AND ABETTING.

That defendant was not charged with aiding and abetting rape did not preclude a jury instruction on that point as the statute abolishing the distinction between principals and accessories makes an aider and abetter into a principal and it was unnecessary to charge defendant in any form other than as a principal (MCLA § 767.39).

8. CRIMINAL LAW—ASSISTANCE OF COUNSEL—JOINT REPRESENTATION —PREJUDICE.

Failure to appoint separate attorneys for indigent co-defendants is not inherent error and joint representation of co-defendant becomes improper only when prejudice results so as to deny to a co-defendant the effective assistance of counsel.

9. CRIMINAL LAW—ASSISTANCE OF COUNSEL—JOINT REPRESENTATION.

Joint representation of co-defendants by the same attorney is proper if the co-defendants do not have conflicting interests as no prejudice can result from the joint representation where there is no inconsistency between the co-defendants' positions.

10. RAPE—CO-DEFENDANTS—JOINT REPRESENTATION.

Joint representation of co-defendants, charged with rape, by the same appointed attorney was not prejudicial where each defendant was involved in the crime to the same degree and each had the same defense, *i.e.*, complainant had consented to the acts of intercourse (MCLA § 750.520).

11. CRIMINAL LAW — APPEAL AND ERROR — WITNESSES — CO-DEFEND-
ANTS — PREJUDICE — INSUFFICIENCY.
    When the only possible source of prejudice disclosed by a trial
    record is the fact that one defendant did not testify, while
    his co-defendants did, that fact, standing alone, is insufficient
    to warrant a reversal of the nontestifying defendant's con-
    viction where the record is totally barren of any indication
    of a miscarriage of justice.

12. CRIMINAL LAW—CO-DEFENDANTS—APPOINTMENT OF SAME AT-
TORNEY—NONCONFLICTING DEFENSES.
    Trial courts preferably should not assign a single attorney to
    represent multiple defendants and such an assignment, when
    for good cause made, will only be allowed where the defend-
    ants' positions are not conflicting for the assignment of an
    attorney is designed to aid a defendant and should not
    itself become a source of prejudice.

Appeal from Recorder's Court of Detroit, Robert
E. DeMascio, J.   Submitted Division 1 October 15,
1969, at Detroit.   (Docket No. 6,402.)   Decided No-
vember 25, 1969.

Roy Dockery was convicted by a jury of rape.
Defendant appeals.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.*
*Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-
pellate Lawyer, and *Patricia J. Pernick,* Assistant
Prosecuting Attorney, for the people.

*Thaddeus C. Barecki,* for defendant on appeal.

Before: LESINSKI, C. J. and J. H. GILLIS and
DANHOF, JJ.

LESINSKI, C. J.   Roy Dockery and two co-defend-
ants, Charles Jackson and James Johnson, were con-
victed of rape (MCLA § 750.520 [Stat Ann 1954 Rev

§ 28.788]), after a jury trial. This appeal is taken
as of right by defendant Dockery.

On the evening of July 2, 1966, on the invitation
of defendants, complainant accompanied the three
to the apartment of Johnson's uncle to hear Jackson
play the bongo drums, the latter being a professional
entertainer. The complainant had known Jackson
all her life and Johnson for nearly ten years. John-
son was her sister's boyfriend at this time. She
had not known Dockery before the evening in ques-
tion.

The complainant testified that during the hours
following their arrival at the apartment, she was
forced to submit to the sexual assaults of each of
the three defendants. Jackson and Johnson, both
of whom testified in their own behalf, admitted hav-
ing relations with complainant, but stated that this
was with her full consent. The account of the eve-
ning's event given by the two testifying defendants
were in total agreement. Dockery elected not to
testify.

The first issue raised on appeal is whether the
people established by sufficient evidence all the ele-
ments of the crime of rape.

Dockery's attack on the sufficiency of the evidence
rests largely on the fact that the record indicates
that he made no overt threats to complainant and
never struck her. Moreover, it appears that com-
plainant never struggled with Dockery nor actually
requested him to stop his actions.

Although this is true, the record does reveal suffi-
cient evidence to establish Dockery's participation
in the crime. Complainant was dragged into the
bedroom by Jackson, who held his hand over her
mouth, despite her biting, scratching and other at-
tempts to break away. While Jackson was thus
engaged in dragging the complainant, Johnson was

"clicking" a knife as he sat watching. In the bedroom, complainant, who had been thrown on the bed, pleaded with Jackson not to proceed and tried to wrestle herself free. This created such a noise that Johnson, who was still in the living room, went into the bedroom and told Jackson to "keep her quiet. If you can't, I will." Jackson said he would and Johnson left. Dockery sat in the living room throughout the commotion, seeing the struggle and hearing the shouts and threats.

After Jackson finished, Johnson entered the bedroom and proceeded to have relations with complainant. When he was done, Dockery entered the room. Complainant stated that Johnson and Dockery said nothing to each other, but only laughed. When Johnson left, complainant asked Dockery why he was doing this to her. He gave no answer, but told her to lay on the bed. She complied and he had intercourse with her.

Finally, there was sufficient evidence to establish that upon completion of the sexual assaults the three took complainant out onto an upstairs front porch to get some air. When she got outside, she started screaming for help. She was immediately pulled back inside, ordered to lie down again, and forced once more to submit to the advances of each of the three men.

From the evidence presented, the jury could have reasonably concluded that complainant was forced to submit against her will, and that Dockery was fully aware of this fact when he had intercourse with her. The testimony also supports the conclusion that Dockery knew that the only reason she submitted was her apprehension and fear and her worn-down condition from the previous rapes.

Dockery argues that the complainant did not resist to the utmost in that she neither physically

struggled with him nor asked him to stop. In *People v. Myers* (1943), 306 Mich 100, however, the Court stated, p 103:

"In *People* v. *Geddes* (1942), 301 Mich 258, we said: 'The degree of resistance required to be shown in rape cases is generally said to be "resistance to the utmost." ' But, it is well settled that failure to resist is excused if the will of the prosecutrix was overcome by fear of the defendant. *Strang* v. *People* (1871), 24 Mich 1, and *Moran* v. *People* (1872), 25 Mich 355 (12 Am Rep 283)."

In the instant case the record supports the conclusion that "the will of the prosecutrix was overcome by fear of the defendant[s]".

Even if Dockery himself did not use any actual force or threats against the complainant, the jury could have properly found that he knowingly took advantage of the fear and the overborne will of the complainant induced by Jackson and Johnson. Where the complainant has already been forced to submit despite her utmost resistance and reasonably believes from all the circumstances that further resistance would be futile, and defendant is aware of this, he may not then argue that the failure to resist precludes a rape conviction. One may not participate in a crime to the extent Dockery did without being liable for the consequences.[1]

Since there is sufficient evidence to support the jury's finding, the verdict will not be overturned on this point. *People* v. *Galinski* (1967), 6 Mich App 192.

The second issue raised by the defendant is whether the trial court erred in its instructions to the jury when it included a charge of aiding and abetting.

---

[1] Dockery's participation goes far beyond the mere presence involved in *People* v. *Burrel* (1931), 253 Mich 321.

As this question was preserved for appeal by timely objection,[2] we proceed to the merits.

In the course of the instruction the court stated that to convict, the jury had to find that the three defendants "either individually or by aiding and abetting each other" had forced complainant to submit to their sexual advances. On another occasion the court stated that the defendants "may" have aided, abetted or counseled each other or that the jury may find they entered into an unlawful agreement, in which case each defendant would be responsible for the acts of the other.[3]

Dockery argues that since the information filed by the people never included a charge of aiding and abetting, the charge was erroneous. He also asserts that no evidence was ever offered on that point. We disagree.

The distinction between accessories and principals has been abolished by statute, MCLA § 767.39 (Stat Ann 1954 Rev § 28.979). The statute makes an aider and abetter into a principal and it is unnecessary to charge the defendant in any form other than as a principal. *People* v. *Smith* (1935), 271 Mich 553; *People* v. *McKeighan* (1919), 205 Mich 367. Therefore, the fact that the information failed to charge aiding and abetting is not relevant to the issue raised.

The final issue raised on appeal concerns the right to counsel. The three co-defendants were financially unable to retain separate counsel. The trial court

---

[2] *People* v. *Jefferson* (1969), 18 Mich App 9; *People* v. *Mallory* (1966), 2 Mich App 359; GCR 1963, 516.2.

[3] The trial court's statement was:

"Now, as you deliberate on them separately, I have indicated to you that in defining the offense they may have aided and abetted each other; and they may have counseled with each other or you may find that they had an unlawful agreement with each other, and in which case each of them would be responsible for the acts of the other."

appointed one attorney to represent all three. The question raised is whether defendant Dockery was denied the right to effective representation since he had to share his assigned attorney with both co-defendants.

In recent years the question of shared counsel has arisen in a substantial number of cases. The majority view[4] was set forth in *Fryar* v. *United States* (CA10, 1968), 404 F2d 1071, 1073:

"Although we have indicated the desirability of appointing separate counsel for indigent codefendants, failure so to do is not inherent error. Joint representation becomes improper only in those cases where prejudice results so as to deny to a defendant the effective assistance of counsel."

The few Michigan cases in point subscribe to this view and require some prejudice to the defendant. In *People* v. *Thomas* (1968), 14 Mich App 718, the Court stated, p 719:

"Finally, we hold that the interests of these defendants were not in conflict and, therefore, no prejudice resulted from their joint representation by retained counsel."

Again, in *People* v. *Wavie Williams* (1969), 19 Mich App 293, the Court concluded that if any inconsistency existed between the positions of co-defendants, it was not prejudicial to the defendant whose appeal was then being considered.[5] We agree with this

---

[4] See: *Glasser* v. *United States* (1942), 315 US 60 (62 S Ct 457, 86 L Ed 680); *Sawyer* v. *Brough* (CA 4, 1966), 358 F2d 70; *Morgan* v. *United States* (CA 2, 1968), 396 F2d 110; *State* v. *Tapia* (1966), 75 NM 757 (411 P2d 234); *Craig* v. *United States* (CA 6, 1954), 217 F2d 355. However, see, also, *Baker* v. *State* (Fla, 1967), 202 S2d 563, which requires separate counsel in all cases, and *Lollar* v. *United States* (1967), 126 App DC 200, 376 F2d 243, where that circuit adopts a standard that an "informed speculation" of prejudice justifies setting aside a conviction.

[5] See, also, *People* v. *Douglas* (1966), 4 Mich App 208, for an analogous situation, where defendant's court-appointed counsel was

standard of review and apply it to the instant case.

Defendant argues that two factors resulted in his being prejudiced by sharing one attorney with his two co-defendants. First, when one lawyer represents several defendants he is "unable to make individual defenses tailored to the varying situations and degrees of involvement of each defendant", thus resulting in a "blanket defense". Although this may be prejudicial in some cases, it was not in the instant case. Here each defendant was involved to the same degree and each had the same defense, *i.e.*, they all alleged consent on the part of the complainant.[6]

The second point raised concerns an alleged failure by complainant to positively identify Dockery after she had done so with Jackson and Johnson. The record reveals, however, that complainant did positively identify Dockery.

The instant case does not involve one defendant making an exculpatory statement putting most of the blame on the co-defendant (*Sawyer* v. *Brough, supra* footnote 4); nor would it have profited one defendant to attack the credibility of another (*People* v. *Donohoe* (1962), 200 Cal App 2d 17 (19 Cal Rptr 454); nor was cross-examination of witnesses inhibited because of conflicting loyalties (*Craig* v. *United States, supra* footnote 4); nor was counsel restricted in final summation because he might injure one defendant by arguing in favor of the others (*People* v. *Donohoe, supra*); nor was representation of one defendant imposed on the retained counsel of the

unable to attend the hearing and the trial court relayed counsel's request that the attorney representing a co-defendant also represent his client, with the request being accepted by defendant. This Court affirmed since there was no showing of prejudice, particularly where the new attorney was familiar with the charge by way of his defense of the co-defendant.

6 Although defendant Dockery did not testify at trial, during the course of the sentencing hearing he made a statement which conformed exactly to the trial testimony of his co-defendants. He admitted having intercourse, but alleged consent.

others with knowledge of a possible conflict of interest (*Glaser* v. *United States, supra* footnote 4) ; and, finally, this case does not involve defenses which are factually inconsistent (*People* v. *Welch* [1963], 212 Cal App 2d 397 [28 Cal Rptr 112]). Moreover, at the sentencing hearing there was no indication that the positions of the co-defendants were so divergent that their attorney would have been forced to argue for substantially different penalties. *State* v. *Karston* (1955), 247 Iowa 32 (72 NW2d 463).

The only possible source of prejudice disclosed by the record is the fact that Dockery did not testify, while his co-defendants did.[8] Yet, standing alone, in a record totally barren of any indication of a miscarriage of justice, we deem this point insufficient to warrant reversal.

The right to effective legal representation is fundamental to criminal procedure. Trial courts preferably should not assign a single attorney to represent multiple defendants. Such an assignment, when for good cause made, will only be allowed where the positions of the defendants are not conflicting. The assignment of counsel is designed to aid a defendant and should not itself become a source of prejudice.

After a careful review of the record in the instant case, however, we conclude that Dockery suffered no prejudice from sharing counsel with his co-defendants.

Affirmed.

All concurred.

---

[8] See: *Morgan* v. *United States, supra* footnote 4, where the Court noted, p 114:

"And if, where two defendants are represented by the same attorney, one defendant elects to take the stand and the other chooses not to, the possible prejudice in the eyes of the jury to the defendant who does not take the stand is almost inescapable."

See, also, *People* v. *Lanigan* (1943), 22 Cal 2d 569 (140 P2d 24), and *People* v. *Donohoe* (1962), 200 Cal App 2d 17 (19 Cal Rptr 454).