NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0272n.06

**FILED**
Apr 11, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

DEYONTA R. ROBINSON )
)
  Petitioner-Appellant, )
)
v. )  ON APPEAL FROM THE
)  UNITED STATES DISTRICT
SHIRLEE A. HARRY )  COURT FOR THE WESTERN
)  DISTRICT OF MICHIGAN
  Respondent-Appellee. )
)
)

BEFORE:  COLE, ROGERS, Circuit Judges, and HOOD, District Judge.[*]

  ROGERS, Circuit Judge. A Michigan state court jury found Deyonta Robinson guilty of

armed robbery. Robinson contends that he was deprived of his constitutional rights because of a

"fatal variance" in the proceedings. The information charged, and the prosecutor argued at trial,

that Robinson committed robbery with a gun; but the judge's original and supplemental jury

instructions allowed Robinson to be convicted of armed robbery with a "dangerous weapon"

more generally. Robinson was ultimately convicted of armed robbery for aiding and abetting his

accomplice, whose "deadly weapon" during the robbery was a broken beer bottle, not a gun.

Robinson requests habeas relief under 28 U.S.C. § 2254 because the judge's variance was so

serious that it amounted to a "constructive amendment" of the charges against him, constituted

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

lack of notice, and hindered his ability to present a defense. Robinson has not met the extremely difficult burden that the law imposes on federal habeas petitioners.

In September 2000, Deyonta Robinson was shooting dice at the home of Eric Reed with Reed, James Hardy, Henry Salazar, J.D. Rice, and Karl McBride. The evidence at trial suggested different versions of what happened next. Rice testified that while in a separate room, he heard a bottle break, and when he came out, McBride was standing over Hardy holding a broken bottle. Then Robinson pulled out a gun and said, "Everybody drop their money." Hardy testified that McBride hit him with a beer bottle, and that Robinson told everyone, "This is a robbery," but Hardy was bleeding so profusely he did not see whether Robinson had a gun. Salazar testified that McBride hit Hardy with a bottle, then Robinson pulled a gun said, "Everybody drop their money." Robinson testified that McBride hit Hardy on the head, Robinson picked up Hardy's money off the ground (intending only to get back the money he had lost through Hardy's alleged cheating), and he and McBride left.

Robinson and McBride were later charged with four counts of armed robbery (with a gun), and four counts of possessing a firearm during the commission of a felony. McBride was tried separately and convicted as an aider and abettor to Robinson, who the prosecutor argued was the principal who committed the robbery with a gun. An information charged Robinson with robbery "while being armed with a dangerous weapon, or an article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, to-wit: GUN…." A Michigan jury found Robinson guilty of one count of armed robbery, three counts of unarmed robbery, and not guilty of four counts of possessing a firearm during the commission of a felony. The not guilty verdicts and a jury question make it appear that Robinson was found

guilty of armed robbery for aiding and abetting McBride, who assaulted the victims with a broken bottle, not a gun.

Throughout the trial, consistent with the charges in the information, the prosecutor repeatedly emphasized that the weapon used to commit armed robbery was "a gun, a handgun" that "Deyonta Robinson did carry or have in his possession." Appellant's Appendix, pp. 8, 11.[1] The alleged variance occurred when the judge gave a general instruction about the elements of armed robbery that the prosecutor had to prove beyond a reasonable doubt:

> Now, second, at the time of the assault the defendant was armed with a weapon designed to be dangerous and capable of causing death or serious injury or with any other object capable of causing death or serious injury that the defendant used as a weapon or with any other object used or fashioned in a manner to lead the person who assaulted to reasonably believe that it was a dangerous weapon.

Appellant's Appendix, p. 25. During deliberations, the jury submitted the following two questions to the judge: "Can D be charged with armed robbery under the aiding and abetting law when his partner has in his hand during the robbery a deadly weapon in the form of a broken beer bottle?" and "What is the difference between larceny and robbery[?]" Appellant's Appendix, pp. 30, 31. Robinson contends that the variance in the original instructions was compounded when the judge responded:

> The defendant can be charged and convicted of armed robbery if you find beyond a reasonable doubt that Karl McBride assaulted either Hardy or Rice or Salazar or Reed with a dangerous weapon and the other elements of armed robbery are proven beyond a reasonable doubt and you are satisfied beyond a reasonable doubt that this defendant aided and abetted Karl McBride in that process. Of course you have to consider each of those armed robbery charges for each count separately.

---

[1] Citations are to the Appellant's Appendix, available electronically as docket entry number 48 in this appeal. The full trial transcript is not available for review electronically, but it is available for review at the courthouse for the United States District Court for the Western District of Michigan. See W.D. Mich. LCivR 5.7(d)(ii). It was made part of the district court's record through a Fed. R. Civ. P. 5 motion, and appears to have been relied upon by the district court in reaching its conclusions.

> [T]he essential difference between larceny and robbery is this: A robbery includes all of the elements of larceny plus the additional requirement that there be an assault. If there's an assault with a dangerous weapon it would be armed robbery.

Appellant's Appendix, pp. 30-31.

Robinson appealed to the Michigan Court of Appeals, claiming that his due process rights were violated by a fatal variance between the information that specified the use of a gun, and the jury instructions, which permitted conviction for armed robbery with a bottle. *People v. Robinson*, 2004 WL 103148, at *4 (Mich. Ct. App. Jan. 22, 2004). The Michigan Court of Appeals affirmed Robinson's conviction because "the trial court gave an instruction for armed robbery as well as an instruction that defendant could be convicted of aiding and abetting Karl McBride," and "the evidence at trial showed either that defendant committed an armed robbery with a gun as the principal, or that defendant committed the crime as an aider and abettor by helping McBride collect the money after McBride hit Hardy over the head with a bottle." *Robinson*, 2004 WL 103148, at *3. The relevant portion of the opinion addressing Robinson's fair notice claim reads as follows:

> Defendant insists that he was convicted of a crime for which he was not charged because the trial court read the above information to potential jurors, but then improperly broadened the scope of that information by instructing the jury on the aiding and abetting theory. We disagree.
>
> A defendant may not be convicted of a crime for which he has not been charged. People v. Kelley, 78 Mich.App 769, 776; 260 NW2d 923 (1977). But the distinction between committing a crime as the principal and as an aider and abettor has been abolished. "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be *prosecuted*, *indicted*, *tried* and on conviction shall be punished as if he had directly committed such offense." MCL 767.39 (Emphasis added). Therefore, aiding and abetting the armed robbery or unarmed robbery is not a separate *charge*, but merely a different *theory* from which to find defendant's guilt. Accordingly, the information provided adequate notice. People v. McKeighan, 205 Mich. 367, 370-371; 171 NW 500 (1919); People v. Palmer, 42 Mich.App 549, 553; 292 NW2d 536

(1972). There was no variance between the information charged and the jury instructions because aiding and abetting is not a separate *charge*; it is merely a separate *theory* for conviction under the same charge.

*Robinson*, 2004 WL 103148, at *4. The Michigan Supreme Court denied relief in a standard order. *People v. Robinson*, 688 N.W.2d 506 (Mich. 2004). Robinson's state post-conviction appeals for relief from judgment were rejected by the trial court, the Michigan Court of Appeals, and Michigan Supreme Court.

Robinson filed a petition in federal court for habeas relief pursuant to § 2254(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA), asserting that he "was denied his constitutional rights pursuant to the 6th and 14th [A]mendments, to due process, and fair notice, by the fatal variance between the information, which specified robbery with a gun, and the jury instructions, which permitted conviction for robbery with a bottle."[2] A magistrate judge issued a detailed report recommending that the petition be denied because Robinson could not show that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, as required by § 2254 of AEDPA. In addition, "Petitioner unquestionably was apprised of the crimes for which he was charged" since "[t]hroughout the trial and conviction, the charged crimes remained the same, as did the date, location, victims and overall course of conduct in issue." Therefore, "[t]he difference between the crime described in the information and the crime as proved and instructed at trial…at best amounts to a minor variance." The magistrate judge then went on to find that the variance (if there was one) did not prejudice Robinson: "As a result [of the discrepancy only "amount[ing] to a minor variance"], Petitioner is required to show prejudice. Petitioner cannot demonstrate the necessary prejudice."

---

[2] Robinson listed nine grounds for relief in his original habeas petition, but on appeal presents only the question of "[w]hether a fatal variance occurred between the information which charged armed robbery with a gun, the prosecution's corresponding theory during trial, and the original and supplemental jury instructions, which permitted conviction for armed robbery by another means?"

The magistrate judge reasoned that Robinson "defended the charges on the ground that he lacked the necessary intent to deprive the victims of their money permanently," not the weapon that was or was not used to commit the crime. Robinson admitted that McBride hit Hardy on the head with a bottle, and that Robinson picked up the money Hardy dropped as a result. Finally, Robinson "was aware well before the time the jury was instructed that the bottle could be found to be a dangerous weapon used in the armed robbery," and his attorney "moved for a directed verdict arguing, in part, that a bottle is not a dangerous weapon and therefore, as a matter of law, no armed robbery with regard to Hardy took place." "For all these reasons," the magistrate judge found "that Petitioner was provided fair notice of the charges brought against him, in compliance with the Sixth Amendment and Due Process Clause."

The district court adopted the magistrate judge's report over Robinson's objections. The court focused on refuting Robinson's objection that the use of the words "to-wit: GUN" in the information narrowed the charges against him such that his conviction for armed robbery with a broken bottle instead of a gun was an "ambush" that deprived him of his constitutional rights. The court acknowledged that the alleged variance question was "difficult, but ultimately conclude[d] the Magistrate Judge reached the correct disposition of the issue." The court relied on *United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012), which relied on a Sixth Circuit case, *Martin v. Kassulke*, 970 F.2d 1539, 1543 (6th Cir. 1992), for the proposition that the "'core of criminality' of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside the purview." The district court also reasoned that the alleged variance was not prejudicial because "Robinson's claim that he focused his defense on the lack of a gun ignores the fact that this defense was necessary to create doubt for the felony-firearm charges;" "[t]he use of the beer bottle to strike a victim was revealed as early

as the preliminary examination" and was not a surprise to Robinson; and "[t]he essential element of the armed robbery charge, the possession of a dangerous weapon during the commission of a robbery, was not altered when the evidence showed the possession of a broken bottle, rather than the possession of a gun."

The district court granted Robinson a certificate of appealability as to "whether the alleged variance was prejudicial" because "[a]lthough this Court concluded otherwise, the fact that the dangerous weapon was not of the same type of weapon as was specified in the indictment, may cause disagreement over the issue of prejudice."

Robinson is not entitled to relief under 28 U.S.C. § 2254 because he has not demonstrated that the Michigan Court of Appeals' decision affirming the jury verdict against him was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Robinson cannot rely on the Supreme Court's decisions in *Kotteakos v. United States*, 328 U.S. 750 (1946), and *Berger v. United States*, 295 U.S. 78 (1935), as a basis for granting him habeas relief because neither *Kotteakos* nor *Berger* is clearly established Supreme Court law for the purposes of AEDPA. Neither case involved an interpretation of the Constitution. Instead, both are direct appeal cases in which the Supreme Court was exercising its supervisory power over the federal courts. *See Fry v. Pliler*, 551 U.S. 112, 116 (2007) (suggesting that *Kotteakos* was decided on "nonconstitutional errors on direct appeal from [a] federal conviction[]"); *United States v. Baugham*, 449 F.3d 167, 221 (D.C. Cir. 2006) (explaining that the error in *Berger* and *Kotteakos* "is perhaps best understood as derived from common law," because "it is not linked to any specific constitutional requirement"). Supreme Court decisions that are not based on constitutional grounds (e.g., those based on the

Court's supervisory powers) are "off the table as far as § 2254(d) is concerned." *Early v. Packer*, 537 U.S. 3, 10 (2002).

Robinson's claim that a fatal variance occurred between the charges against him in the initial information and the crime for which he was ultimately convicted based on the jury instructions sounds in fair notice. The Supreme Court's jurisprudence in this area establishes general parameters for lower courts to follow. Certainly, Robinson cannot be convicted of a crime for which he was not charged. *Cole v. Arkansas*, 333 U.S. 196, 201 (1948). Indeed, "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused criminal proceeding in all courts, state or federal." *Id.* Robinson argues that he was ambushed by the conviction because the information specified the use of a gun, not a bottle, to commit armed robbery. But the information against Robinson did apprise him of the crime he needed to defend against: assault with a dangerous weapon while stealing money or property from the identified victims.

Robinson was adequately apprised of the crime against which he needed to defend. The fact that the prosecution specified the use of a gun in the information for armed robbery did not alter the nature of the charges against him, and did not deprive Robinson of his constitutional right to fair notice. Robinson argues that his defense was prejudiced because he "testified without knowing he could be convicted based upon what Karl did with the bottle." Robinson was offered "a nine year cap in his sentence for a guilty plea. If Petitioner had known that he could be convicted of armed robbery for what his brother did with the bottle, it is highly likely he would have agreed to this plea bargain." Michigan law, however, has abolished the distinction between committing a crime as the principal or as an aider and abettor, and Robinson should

have known that he could be found liable for McBride's use of a bottle to threaten and assault the victims. Robinson cites Seventh Circuit and New York state court law to support his claim that the use of "to-wit: GUN" in the information narrows the scope of the charge, such that it was improper for him to be convicted of armed robbery with a bottle. His reliance is misplaced. Because these decisions are not Supreme Court precedent, nor do they interpret Michigan state law, the Michigan Court of Appeals did not unreasonably apply federal law in disregarding them.

The crime with which Robinson was charged and the crime for which he was convicted remained the same. While the information specified the use of a firearm as the means of committing armed robbery, it also included the broader definition of robbery "while being armed with a dangerous weapon, or an article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon." According to the magistrate judge, one victim, Rice, testified at the preliminary hearing that McBride used a bottle to hit Hardy over the head just as Robinson announced it was a "stick-up." All of the witnesses testified that McBride hit a victim over the head with a bottle before Robinson took the money, and at the close of the prosecution's case, defense counsel moved for a directed verdict arguing, in part, that a bottle is not a dangerous weapon, and therefore, as a matter of law, no armed robbery with regard to one particular victim took place. The trial court denied the motion. Robinson, therefore, was aware well before the time the jury was instructed that the bottle could be found to be a dangerous weapon used in the armed robbery.

The Supreme Court has made clear that under § 2254(d), a circuit court first must find that a decision was contrary to clearly established federal law; only then may it address the question "whether [the Court of Appeals'] decision constituted error and if so whether the error had a substantial or injurious effect on the verdict." *Early*, 537 U.S. at 10. Robinson points to

no Supreme Court precedent establishing that the Michigan Court of Appeals' decision affirming his conviction was an objectively unreasonable application of federal law. *Williams v. Taylor*, 529 U.S. 362, 411 (2000). As the Supreme Court noted in *Renico v. Lett*, 559 U.S. 766, 779 (2010), "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts. Whether or not the Michigan Supreme Court's opinion reinstating Lett's conviction in this case was correct, it was clearly not unreasonable." It is not enough for Robinson to point to circuit precedent in his favor because "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012). Because AEDPA authorizes a federal court to grant relief only when a state court's application of federal law was unreasonable, it follows that "[t]he more general the rule" at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—"the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

Robinson has not demonstrated the existence of Supreme Court case law clearly holding that changing the weapon used to commit armed robbery (under an expansive armed robbery statute) altered the charges against him, such that he lacked fair notice. In *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003), the Supreme Court denied relief under § 2254 because the Supreme Court's decisions on cruel and unusual punishment "have not been a model of clarity" and "have not established a clear or consistent path for courts to follow." Instead, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 72-73 (quoting *Harmelin v. Michigan*, 111 S.

Ct. 2680 (1993) (Kennedy, J., concurring in part and concurring in judgment)). In the context of fair notice, the Supreme Court requires only that an indictment contain the elements of the offense to be charged, that it sufficiently apprise the defendant of the crime he must defend against, and that it protect the defendant against double jeopardy. The "precise contours" of the doctrine are "unclear." Therefore, so long as the Michigan Court of Appeals' decision affirming Robinson's conviction was not objectively unreasonable, it does not contradict established Supreme Court precedent. As the district court correctly noted, "[t]he difference between the crime described in the information and the crime as proved and instructed at trial, therefore, at best amounts to a minor variance."

The judgment of the district court is AFFIRMED.