*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KELLI MARIE WORTH-MCBRIDE,

Defendant-Appellant.

UNPUBLISHED
February 13, 2020

No.  331602
Wayne Circuit Court
LC No.  13-000575-02-FC

ON REMAND

Before:  GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant was convicted by bench trial of first-degree child abuse, MCL 750.136b(2), and second-degree murder, MCL 750.317, arising out of the death of her three-month-old son, Joshua Wilson, Jr. (Junior).  Defendant was sentenced to 25 to 40 years' imprisonment for her conviction of first-degree child abuse and 15 to 30 years' imprisonment for her conviction of second-degree murder.  On July 13, 2017, this panel affirmed defendant's convictions, rejecting an argument that the evidence was insufficient to sustain them.  *People v Worth-McBride*, unpublished per curiam opinion of the Court of Appeals, issued July 13, 2017 (Docket No. 331602) (*Worth-McBride I*), vacated 929 NW2d 285 (Mich, 2019).  On June 28, 2019, our Supreme Court vacated this panel's opinion and remanded the case for us to consider whether, in light of the fact that the prosecution proceeded only on a theory that defendant aided and abetted Junior's father, Joshua Wilson, Sr. (Wilson), in committing the crimes, defendant's due-process right to be informed of the nature of the charges against her was violated when the trial court convicted defendant as a principal.  *People v Worth-McBride*, 929 NW2d 285 (Mich, 2019) (*Worth-McBride II*).  We again affirm.

In analyzing whether defendant's due-process right was violated, our Supreme Court has directed us to *Cole v Arkansas*, 333 US 196, 201; 68 S Ct 514; 92 L Ed 644 (1948).  In *Cole*, the United States Supreme Court considered whether the petitioners were denied due process because their convictions were affirmed under a criminal statute that they had not been charged with violating.  The petitioners had originally been tried and convicted under a statutory section

-1-

referred to in *Cole* as "s 2 of Act 193 of the 1943 Arkansas Legislature." *Id*. at 197, 200-201.[1] However, on appeal to the Arkansas Supreme Court, the convictions were affirmed as though the petitioners had been tried for violating *another* statutory section—"s 1." *Id*. at 201.[2] The United States Supreme Court reversed the Arkansas Supreme Court's decision, reasoning:

> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal. If, as the State Supreme Court held, petitioners were charged with a violation of s 1, it is doubtful both that the information fairly informed them of that charge and that they sought to defend themselves against such a charge; it is certain that they were not tried for or found guilty of it. It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made. [*Id*. (citations omitted).]

In short, the due-process violation in *Cole* involved convictions under one statutory section being upheld on the basis of a violation of another statutory section. That holding is inapplicable in the present case, where the prosecution theorized that defendant aided and abetted a crime, but defendant was ultimately convicted as a principal.

Importantly, in Michigan, aiding and abetting does not constitute a separate offense but is merely a theory of criminal liability. See *People v Perry*, 460 Mich 55, 63 n 20; 594 NW2d 477 (1999) (noting that "being an aider and abettor is simply a theory of prosecution, not a separate substantive offense"). "Michigan has, by statute, abolished all common-law distinctions between

---

[1] As quoted in *Cole*, s 2 provided, in relevant part:

> It shall be unlawful for any person acting in concert with one or more other persons, to assemble at or near any place where a "labor dispute" exists and by force or violence prevent . . . any person from engaging in any lawful vocation, or for any person acting . . . in concert with one or more other persons, to promote, encourage or aid any such unlawful assemblage. [*Cole*, 333 US at 198.]

[2] According to *Cole*, s 1 provided:

> It shall be unlawful for any person by the use of force or violence, or threat of the use of force or violence, to prevent or attempt to prevent any person from engaging in any lawful vocation within this State. Any person guilty of violating this section shall be deemed guilty of a felony, and upon conviction thereof shall be punished by confinement in the State Penitentiary for not less than one (1) year, nor more than two (2) years. [*Cole*, 333 US at 199 n 2.]

principals and accessories." *People v Mann*, 395 Mich 472, 476; 236 NW2d 509 (1975).[3] "A person who aids and abets is guilty as a principal." *Id*. at 477.

Indeed, in a recent unpublished opinion,[4] this Court rejected the applicability of *Cole* in a situation similar to the present case. In *People v McCants*, unpublished per curiam opinion of the Court of Appeals, issued July 17, 2018 (Docket No. 331248), p 15, the defendant argued that the prosecutor tried the case on a theory that the defendant directly committed the crimes, but after the close of proofs, moved to include jury instructions on an aiding-and-abetting theory. The defendant contended that this amounted to a violation of his due-process right to reasonable notice of the charges against him. *Id*. In rejecting the defendant's argument, this Court stated, in relevant part:

> Defendant's reliance on decisions from the United States Supreme Court [including *Cole*] and from Michigan's Supreme Court to support his position is misplaced. The cases defendant relies on involve defendants charged with one crime or violation but convicted, or whose convictions were upheld, based on another crime or violation, or who were convicted on inadequate statements of the charges against them. These cases involved charges for distinct crimes about which the defendants were not informed and against which they could not properly defend themselves. They are inapplicable here because aiding and abetting is not a distinct crime, see *People v Greaux*, 461 Mich 339, 344-345; 604 NW2d 327 (2000), but a theory of criminal liability, see *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). [*McCants*, unpub op at 16 (citations omitted).]

Notably, our reasoning from *McCants* conforms to longstanding and well-established Michigan caselaw.

In *People v Wright*, 90 Mich 362, 363-364; 51 NW 517 (1892),[5] the defendant was convicted of keeping a house of ill fame, and on appeal, challenged the trial court's decision to instruct the jury on an aiding-and-abetting theory in the absence of an actual charge of aiding and

---

[3] MCL 767.39 states:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

[4] Although unpublished opinions are not binding precedent, MCR 7.215(C)(1), such opinions may be considered for their persuasive value, *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004).

[5] "Michigan's aiding[-]and[-]abetting statute has been in force and substantively unchanged since the mid-1800s." *Robinson*, 475 Mich at 7-8.

abetting. Our Supreme Court rejected the argument, noting that the aiding-and-abetting statute provided that an aider and abettor "may be indicted, tried, and punished as [a] principal," and that the charge was supported by proof that the defendant aided or assisted others in committing the offense. *Id*.

In *People v McKeighan*, 205 Mich 367, 369-370; 171 NW 500 (1919), the defendant was convicted of assault and unarmed robbery on a theory that he had induced other persons to commit the crimes. The defendant argued on appeal that the felony information was required to allege sufficient facts to inform him of the exact nature of the charges against him, and that his felony information was defective because it did not inform him of what connection he allegedly had to the commission of the offenses other than as a direct participant. *Id*. at 370. Our Supreme Court held that the aiding-and-abetting "statute ha[d] clearly abolished all distinctions previously existing between principals and accessories, and in express terms applie[d] to indictments (including informations)." *Id*. at 370-371. "The information was clearly sufficient to warrant the conviction" because, under the statute, a defendant "who aids and abets is now a principal." *Id*. at 371 (quotation marks and citation omitted).

In *Mann*, 395 Mich at 474-475, the defendant was convicted of larceny in a building after walking out of a store with a box containing a tape recorder. The defendant testified at trial that a friend had asked him to carry the box out of the store. *Id*. On appeal to our Supreme Court, the defendant argued "that it was error for the trial court to instruct the jury on aiding and abetting when neither party had requested such an instruction, that theory had not been advanced at trial, and there was no opportunity to argue the matter to the jury." *Id*. at 475. The defendant contended that "the trial judge did not inform counsel before closing arguments that such instruction would be given. Therefore, [the] defendant had no opportunity to rebut that charge, or to submit instructions on aiding and abetting." *Id*. The prosecutor responded that it was the defendant's own testimony and defense counsel's closing argument that justified the aiding-and-abetting instruction. *Id*. The defendant replied that the prosecution theory was that the defendant himself had committed the offense, not that he was an accessory. *Id*. at 477. In rejecting the defendant's argument, our Supreme Court summarized its decisions in *Wright* and *McKeighan*. *Id*. The Court concluded that, given the defendant's testimony suggesting that his friend might have stolen the tape recorder, there was evidence to support the aiding-and-abetting instruction. *Id*. at 478.

In *People v Lamson*, 44 Mich App 447, 449; 205 NW2d 189 (1973), the defendant argued that he was denied due process because the felony information did not identify an aiding-and-abetting theory and the prosecutor failed to raise that theory until after the close of evidence at trial. This Court quoted the reasoning contained in *People v Dockery*, 20 Mich App 201, 207; 173 NW2d 726 (1969), which emphasized the abolition of the distinction between principals and accessories. "The statute makes an aider and abettor into a principal and it is unnecessary to charge the defendant in any form other than as a principal. Therefore, the fact that the information failed to charge aiding and abetting is not relevant to the issue raised." *Lamson*, 44 Mich App at 450, quoting *Dockery*, 20 Mich App at 207.

Finally, in *People v Hooper*, 50 Mich App 186, 191; 212 NW2d 786 (1973), the defendant argued that he was denied his due-process right to notice of the nature of the charges against him because the trial court instructed the jury on aiding and abetting even though the

defendant was not charged in the felony information as an aider and abettor. This Court rejected the defendant's argument, noting that "[i]t is well settled that an aider and abettor may be indicted, tried, and on conviction punished as a principal and no denial of due process results from charging an aider and abettor as a principal." *Id.* See also *People v Clark*, 57 Mich App 339, 343-344; 225 NW2d 758 (1975) (rejecting a similar due-process argument and quoting the analysis in *Hooper*); *Hack v Elo*, 38 F Appx 189, 193 (CA 6, 2002) (citing *Hooper* and noting that when the petitioner went to trial, he "knew that under Michigan law he would be guilty" of the same crime if "the jury found that he was either the principal or an individual who aided and abetted principals in the conduct of the crime").[6]

Similarly, in this case, defendant's conviction as a principal based upon a theory of aiding and abetting does not give rise to a due-process violation. Moreover, we note the clear evidence that defendant was fully informed of the nature of the charges against her, including the fact that she could be found guilty as either a principal or an aider and abettor. Defendant presented arguments in her motion to quash and at trial that she was not guilty as *either* an aider and abettor *or* a principal.[7] Defendant has not identified any different arguments that she would have made or any additional evidence that she would have presented if aiding and abetting had not been identified by the prosecution as a theory of liability, or if the theory had been that she acted as a principal. In short, defendant was on notice of the charges for which she was on trial, and she has not established a due-process violation.

Additionally, we note, consistent with our prior opinion, that there was substantial evidence to support defendant's convictions under the aiding-and-abetting theory. *Worth-McBride I*, unpub op at 4 n 3. With respect to first-degree child abuse, we noted:

> [T]here was ample record evidence to support the trial court's determination that defendant knew that Wilson would cause serious physical harm to Junior. For example, Sergeant David Dinsmore of the Westland Police Department testified at trial that while he interviewed defendant, she admitted that she had thrown Junior down herself, and that she had seen Wilson throw Junior and "bear hug"

---

[6] Although lower federal court opinions are not binding on this Court, they may be considered persuasive. *People v Jackson*, 292 Mich App 583, 595 n 3; 808 NW2d 541 (2011).

[7] In her motion to quash, defendant argued that "[b]ecause there was insufficient evidence adduced at the preliminary examination of [defendant's] culpability as either a principle [sic] or as an aider and abettor, the examining magistrate committed a clear abuse of discretion in binding defendant over for trial." At trial, defense counsel noted in his closing argument that the prosecution theory was aiding and abetting, but defense counsel nonetheless went on in his closing argument to state, "I don't believe that the Prosecution has established all the elements of First[-]Degree Child Abuse especially with regard to this woman's participation either as an aider and abettor or as a direct participant." Therefore, although the prosecution theory was aiding and abetting, and although the major focus of the parties' arguments concerned aiding and abetting, defendant nonetheless made arguments in her motion to quash and at trial disputing the idea that she acted as a principal.

Junior by folding the infant in half, apparently to stop him from breathing so that he would not cry. At the time of his death, Junior also had serious injuries in various stages of healing, including fractures to his wrist, legs, ribs, and clavicles, which were estimated to be about two weeks old. Specifically, Dr. Jeffrey Jentzen, M.D., a forensic pathologist with the University of Michigan, conducted the autopsy on Junior. According to Dr. Jentzen, the injuries to Junior's tibia were consistent with "a twisting or torque injury that occurs in a child." While defendant offers myriad explanations regarding how Junior incurred these injuries that were healing at the time of his death, and claims that she was not aware of the severity of these injuries until his autopsy was performed, we are required to view the record evidence in the light most favorable to the prosecution, resolving any conflicts in the evidence in favor of the prosecution. [*People v*] *Kaanan*, 278 Mich App [594,] 619[; 751 NW2d 57 (2008)]. Put simply, the horrific and severe nature of the healing fractures were such that the trial court could reasonably infer that defendant knew of their existence on her infant's body, particularly where she informed the police investigating her son's murder that she personally witnessed Wilson's brutal and callous treatment of her child in the days leading up to his death. Additionally, the fact that defendant initially lied about not being present in the apartment when Junior was murdered, and then admitted that she was, is indicative of her consciousness of guilt. See *People v. Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008) ("[The fact-finder] may infer consciousness of guilt from evidence of lying or deception."). On this record, there is ample evidence to support the trial court's verdict convicting defendant of first-degree child abuse. [*Worth-McBride I*, unpub op at 2-3 (fourth alteration in original).]

On remand, our Supreme Court has reminded us of *People v Burrell*, 253 Mich 321, 323; 235 NW 170 (1931), which adopted the idea that "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is not enough to make a person an aider or abettor . . . nor is mere mental approval, sufficient, nor passive acquiescence or consent." (Quotation marks and citation omitted.) We would still find the evidence sufficient, as the trial court could still have found defendant was beyond merely present when Junior was abused, particularly given defendant's admission that she had personally thrown the infant into a bassinet, combined with the myriad of injuries to Junior's body at different stages of healing.

With respect to second-degree murder, we noted that defendant "acted in wanton and willful disregard of the likelihood that the natural tendency of her behavior was to cause death or great bodily harm to Junior when she entrusted Junior to Wilson's care, knowing Wilson's history as a violent abuser of her infant son." *Worth-McBride I*, unpub op at 3 (quotation marks and citation omitted).

[D]efendant admitted that she personally witnessed Wilson physically abuse Junior on more than one occasion. Specifically, defendant saw Wilson throw Junior and "bear hug" the child by folding him in half on multiple occasions to essentially stop him from breathing so he could no longer cry. Defendant witnessed some of this behavior the morning of Junior's murder. Additionally, Junior's multiple healing fractures, which Dr. Jentzen opined were approximately

two weeks old, were so severe that defendant's argument that she was not aware of their severity is implausible. [*Id*. at 3-4.]

As with her child abuse conviction, we noted that "[t]he record evidence amply supported defendant's conviction of second-degree murder." *Id*. at 4. We would again conclude that the evidence was sufficient to support a conviction of second-degree murder.

Additionally, in our prior opinion, we noted defendant's cursory suggestion that the trial court rendered an inconsistent verdict by acquitting her of felony murder based upon her lack of the requisite *mens rea*, but nonetheless convicting her of second-degree murder. We declined to address the argument, concluding that defendant had waived it by specifically requesting "the trial court consider the charge of second-degree murder in deciding the case." *Id*. at 4 n 4. Defendant suggested in a footnote in her brief that the trial court had impermissibly rewarded her for waiving a jury trial by acquitting her of felony murder. The prosecution then conceded in its brief that the trial court had issued an inconsistent verdict via a "waiver break."

A waiver break occurs when a defendant waives his or her right to a jury trial and is rewarded by being acquitted of one charge and found guilty of a lesser charge, where the acquittals are inconsistent with the court's factual findings. *People v Ellis*, 468 Mich 25, 27; 658 NW2d 142 (2003). Our Supreme Court has noted that the practice of waiver breaking "violates the law and a trial judge's ethical obligations," and could be a "ground for referral to the Judicial Tenure Commission." *Id*. at 26, 28. "A decision to drop or plea bargain charges is one that lies with one or both of the parties, not the court." *Id*. at 27. However, because "a trial court's decision of not guilty, whether proper or not, is constitutionally protected by double jeopardy principles," "a trial judge that rewards a defendant for waiving a jury trial by 'finding' [her] not guilty of a charge for which an acquittal is inconsistent with the court's factual findings cannot be corrected on appeal." *Id*. at 28. Thus, even ignoring defendant's waiver of this argument, we are unable to "correct the effects of an improper 'waiver break' on appeal." *Id*.

Lastly, we note that, in a supplemental brief filed after this case was remanded, defendant raises a number of issues outside the scope of the remand and that could have been raised in her initial appeal. See *People v Russell*, 297 Mich App 707, 714; 825 NW2d 623 (2012) (noting that, ordinarily, "[w]hen an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order"). See also *VanderWall v Midkiff*, 186 Mich App 191, 201-202; 463 NW2d 219 (1990) ("[T]he principles of res judicata require that a party bring in the initial appeal all issues which were then present and could have and should have been raised."). Although we note that the substantive merit of defendant's ineffective assistance claim and the suggestion that the trial court changed the basis for its conviction post-trial can be made out from this opinion, we decline to specifically address those arguments because they are not properly before us.

To summarize, defendant's due-process right to be informed of the nature of the charges against her was not violated by the trial court's conviction of defendant as a principal, despite the prosecution proceeding solely on an aiding-and-abetting theory. First, aiding and abetting is merely a theory of prosecution, and second, defendant has not identified any different arguments that she would have made or any additional evidence that she would have presented if the prosecution had preceded as though defendant had acted as the principal. Further, in finding

defendant guilty as a principal, the trial court utilized the same evidence that was pertinent to the aiding-and-abetting theory, including defendant leaving Junior in the care of Wilson after having seen Wilson's serial acts of horrific abuse of Junior and despite Junior's severe injuries and extensive bruising. Defendant was clearly on notice of the charges for which she was on trial, and has not established a due-process violation. Additionally, and as we concluded in our previous opinion, the evidence was sufficient to support both of defendant's convictions under a theory of aiding and abetting. Finally, with respect to the verdict—and noting that the evidence is sufficient to support a conviction of first-degree child abuse—we are unable on appeal to correct the effects of an improper waiver break.

Affirmed.


/s/ /Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood